**NOT YET SCHEDULED FOR ORAL ARGUMENT**

# United States Court of Appeals
# for the District of Columbia Circuit

## No. 23-1239

TRENTON J. PALMER,

*Petitioner,*

*v.*

FEDERAL AVIATION ADMINISTRATION/NATIONAL
TRANSPORTATION SAFETY BOARD,

*Respondent.*

*On Petition for Review from the National Transportation Safety Board*

**BRIEF OF *AMICI CURIAE* AIRCRAFT OWNERS AND PILOTS ASSOCIATION, ALASKA AIRMEN'S ASSOCIATION, AND EXPERIMENTAL AIRCRAFT ASSOCIATION IN SUPPORT OF PETITIONER TRENTON PALMER AND REVERSAL OF THE ORDER OF THE NATIONAL TRANSPORTATION SAFETY BOARD DATED MARCH 30, 2023**

KATHLEEN A. YODICE
YODICE ASSOCIATES
12505 Park Potomac Avenue
  Suite 600
Potomac, Maryland 20854
(202) 810-6800
kathy.yodice@yodice.com
*Counsel for Amicus Curiae Experimental Aircraft Association*

JUSTINE HARRISON
421 Aviation Way
Frederick, MD 21701
T: 301.695.2206
justine.harrison@aopa.org
*Counsel for Amicus Curiae Alaska Airmen's Association*

JUSTINE HARRISON
JARED ALLEN
IAN ARENDT
DANIEL J. HASSING
RYAN KING
JEREMY BROWNER
RAYMOND C. SPECIALE
AOPA
421 Aviation Way
Frederick, Maryland 21701
(301) 695-2206
justine.harrison@aopa.org
*Counsel for Amicus Curiae Aircraft Owners and Pilots Association*

December 18, 2023



## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Under D.C. Circuit Rule 28(a)(1), Amici hereby certify the following:

**A. Parties and Amici.** Except for the following, all parties, intervenors, and amici appearing in this court are listed in the Brief for Petitioner Trent Palmer:

> Alaska Airmen's Association – Amicus Curiae; and
> Experimental Aircraft Association – Amicus Curiae.

**B. Rulings Under Review.** References to the rulings at issue appear in the Brief for Petitioner Trent Palmer.

**C. Related Cases.** This case was not previously before this Court or any other court. There are no other related cases pending before this Court.

## RULE 26.1 DISCLOSURE STATEMENT

There are no companies, publicly held or otherwise, that hold any ownership interest in any of the Amici. Amici are associations representing various interests in aviation. The general nature and purpose of Amici are further identified in the statement of interest below.

All parties have consented to participation of all Amici in this matter.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ..............i

RULE 26.1 DISCLOSURE STATEMENT.............................................. ii

TABLE OF AUTHORITIES ...................................................iv

INTRODUCTION ...................................................................1

STATEMENT OF INTEREST AND AUTHORITY OF AMICI............................2

    Aircraft Owners and Pilots Association ........................................2

    Experimental Aircraft Association ................................3

    Alaska Airmen's Association ........................................4

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS ........4

ARGUMENT .....................................................................5

    1.    The National Transportation Safety Board has consistently failed to apply the Federal Rules of Civil Procedure and Rules of Evidence despite Congress' mandate that it do so when practicable. .........................................................5

    2.    Experts, even those employed by agencies, may not testify as to questions of law, including the interpretation of regulations..............10

    3.    Congress has not mandated that the NTSB defer to the FAA's choice of sanctions. ..........................................................13

        a.    The language Congress used in U.S.C. § 44709(d) forecloses deference.................................................14

        b.    *Pham v. Nat'l Transp. Safety Bd*. is inconsistent with how other split enforcement regimes work..............................18

        c.    The Supreme Court cases *Pham v. Nat'l Transp. Safety Bd*. relied upon are distinguishable and inapplicable to the question of whether the NTSB owes the FAA choice of sanction deference. .........................................21

CONCLUSION.................................................................24

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Coal Co. v. Fed. Mine Safety and Health Rev. Comm'n*,
933 F.3d 723 (D.C. Cir. 2019)...................................................... 14, 19, 20, 21, 23

*Am. Power & Light Co. v. SEC*,
329 U.S. 90 (1946)......................................................................... 14, 22

*Burkhart v. Wash. Metro. Area Transit Auth.*,
112 F.3d 1207 (D.C. Cir. 1997)..................................................... 10, 12

*Chao v. Occ. Safety and Health Rev. Comm'n*,
480 F.3d 320 (5th Cir. 2007) ......................................................... 14, 19

*Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*,
467 U.S. 837 (1984).............................................................................7

*City of Arlington, Tex. v. F.C.C.*,
569 U.S. 290 (2013)......................................................................... 15, 17

*Cuyahoga Valley Ry. Co. v. United Transp. Union*,
474 U.S. 3 (1985)...............................................................................19

*Fair Lines Am. Found. Inc. v. US Dept. of Comm.*,
619 F. Supp. 3d 212 (D.D.C. 2022).......................................................7

*Garvey v. Nat. Transp. Safety Bd.*,
190 F.3d 571 (D.C. Cir. 1999)............................................................18

*Irons v. Diamond*,
670 F.2d 265 (D.C. Cir. 1981)............................................................13

*Kisor v. Wilkie*,
588 U.S. ___, 139 S.Ct. 2400 (2019)..................................................15

*Lance Roofing Co. v. Hodgson*,
343 F. Supp. 685 (N.D. Ga. 1972).......................................................19

iv

*LaShawn A. v. Barry*,
    87 F.3d 1389 (D.C. Cir. 1996)...........................................................................13

*Little v. Technical Specialty Products, LLC*,
    940 F. Supp. 2d 460 (E.D. Tex. 2013)..............................................................11

*Martin v. Occ. Safety and Health Rev. Comm'n*,
    499 U.S. 144 (1991)...................................................................... 14, 21

*Melendez-Diaz v. Mass.*,
    557 U.S. 305 (2009)...........................................................................9

*Pham v. Nat' Transp. Safety Bd.*,
    33 F.4th 576 (D.C. Cir. 2022)............................................... 2, 13, 14, 18

*Sellersburg Stone Co. v. Fed. Mine Safety and Health Rev. Comm'n*,
    736 F.2d 11247 (7th Cir. 1984) ........................................................20

*United States v. Noel*,
    581 F.3d 490 (7th Cir. 2009) ...................................................... 11, 12

*United States v. Tamman*,
    782 F.3d 543 (9th Cir. 2015) ............................................................11

*United Steelworkers of Am., Local No. 185 v. Herman*,
    216 F.3d 1095 (D.C. Cir. 2000)........................................................19

*Woods v. Lecureux*,
    110 F.3d 1215 (6th Cir. 1997) .........................................................11

**Statutes**

29 U.S.C. § 666(j) .........................................................................19

49 U.S.C. § 44709.................................................... 13, 14, 15, 16, 18, 23

**Other Authorities**

158 Cong. Rec. H5100-01 (2012)......................................................5

Black's Law Dictionary (11th ed. 2019) ..........................................7

*FAA v. Ferguson*, NTSB Order No. EA-5360 (2008) ......................6

v

*FAA v. Kennedy*, NTSB Order No. EA-5928 (2022) ...............................................6

*FAA v. Norwitch*, NTSB Order No. EA-5914 (2021)............................................6

*FAA v. Palmer*, NTSB Order No. EA-5947 (2023)...............................................13

*FAA v. Tushin*, NTSB Order No. EA-5902 (2021)..............................................6

Public Law 112-153 ...............................................................................5

**Rules**

D.C. Cir. R. 29(b) ...............................................................................2

Fed. R. App. P. 29(a)(2) .......................................................................2

Fed. R. App. P. 29(a)(4)(E)...................................................................4

Fed. R. Evid. 104 ...............................................................................8

Fed. R. Evid. 702 ...............................................................................10

**Regulations**

14 C.F.R. § 91.13 ...............................................................................1

14 C.F.R. § 91.119 ...................................................................... 1, 10, 12, 22

49 C.F.R. § 821 ...............................................................................1

49 C.F.R. § 821.38 ...............................................................................6

49 C.F.R. § 821.5 ...............................................................................6

49 C.F.R. § 821.52 ...............................................................................8

**INTRODUCTION**

This case concerns a National Transportation Safety Board ("NTSB") decision to suspend the private pilot certificate of Petitioner Trent Palmer for 120 days. The Federal Aviation Administration ("FAA") alleged Palmer violated two regulations. First, the FAA claimed Palmer violated 14 C.F.R. § 91.119 by operating his airplane within 500 feet of a person, vessel, vehicle, or structure when otherwise not necessary for takeoff or landing. Based on the same facts, the FAA also alleged a residual violation of 14 C.F.R. § 91.13, which prohibits operating an aircraft in a careless or reckless manner.

Amici are general aviation membership organizations. Here, Amici focus on issues concerning the NTSB's failure to apply the Federal Rules of Civil Procedure and Federal Rules of Evidence to air safety proceedings governed under 49 C.F.R. Part 821 and the NTSB's ability to make independent sanction determinations without deference to the FAA's choice of sanction. Specifically, Amici demonstrate that the NTSB has failed to give appropriate consideration to Congress' mandate to apply the Federal Rules of Civil Procedure and Evidence to air safety proceedings when practicable as required by the Pilot's Bill of Rights. As an example, Amici show that the NTSB administrative law judge who initially reviewed the order of the FAA acted contrary to law when he allowed the FAA's designated expert, Specialist Speeg, to offer legal opinions over Palmer's repeated

objections. In addition, Amici argue this Court did not properly consider the split-enforcement regime in deciding *Pham v. Nat' Transp. Safety Bd.*, 33 F.4th 576 (D.C. Cir. 2022) and incorrectly held that the NTSB is required to defer to the FAA in sanctioning an airman. Amici respectfully request that this Court reconsider *Pham* to the extent that *Pham* is inconsistent with Congress' enactment.

## STATEMENT OF INTEREST AND AUTHORITY OF AMICI

Amici are all membership groups representing general aviation interests. While each Amicus caters to a subgroup within general aviation, Amici and their members share a concern with how the NTSB conducts its review of FAA enforcement actions against airmen. Amici's interest in this case is ensuring that NTSB follow Congressional mandates as to how those proceedings are to be conducted. These mandates include the obligation to apply the Federal Rules of Civil Procedure and Evidence and to make an independent conclusion as to the facts and sanctions in FAA enforcement actions.

All Amici appear by consent of the parties under FRAP 29(a)(2) and Circuit Rule 29(b).

**Aircraft Owners and Pilots Association**

The Aircraft Owners and Pilots Association (AOPA) is a 501(c)(4) organization providing various services to its members, who are primarily general aviation pilots and aircraft owners. AOPA represents hundreds of thousands of

members.[1] AOPA's central mission is to preserve the freedom to fly and ensure that general aviation remains accessible. AOPA participates in legislative, administrative, and legal proceedings that may affect its members' interests. In doing so, AOPA educates politicians and policymakers on issues affecting its members and the general aviation industry. AOPA's members are subject to Congressional enactments and administrative regulations concerning aviation. As a result, AOPA's members are interested in the sound interpretation and application of those statutes and regulations.

**Experimental Aircraft Association**

The Experimental Aircraft Association (EAA) is based in Oshkosh, Wisconsin and is a nonprofit membership association with 270,000 members[2] and 900 local chapters worldwide that support grassroots recreational aviation. EAA's members are airmen, homebuilders, and aviation enthusiasts who are active in the aviation industry. EAA's mission is to grow participation in aviation, including flying, building, and restoring recreational aircraft. That mission is served through a multitude of EAA education, safety, and historic programming and initiatives for all ages. EAA seeks to participate in this case in support of its members' interests

---

[1] Petitioner Trent Palmer is a current member of Aircraft Owners and Pilots Association.

[2] Petitioner Trent Palmer is a current member of Experimental Aircraft Association.

3

in the fair and appropriate exercise of FAA's authority to ensure compliance with its safety regulations and a meaningful and just review of FAA's exercise of its enforcement program, both of which are critical for the future success of aviation.

**Alaska Airmen's Association**

The Alaska Airmen's Association is a nonprofit trade association representing the interests of general aviation pilots, mechanics, and enthusiasts, primarily in Alaska. Its membership includes individuals and businesses. Alaska is an aviation-centric state and backcountry, off-airport operations are commonplace. The Alaska Airmen's Association's primary mission is to protect, preserve, and promote general aviation in Alaska.

## STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS

Under FRAP 29(a)(4)(E), Amici state that no party's counsel authored this brief in whole or part. No party or party's counsel contributed any money that was intended to fund the preparation or submission of this brief. No person or organization other than Amici contributed money to fund the preparation or submission of this brief.

4

# ARGUMENT

1. **The National Transportation Safety Board has consistently failed to apply the Federal Rules of Civil Procedure and Rules of Evidence despite Congress' mandate that it do so when practicable.**

Palmer has asserted errors related to both the sufficiency of FAA's complaint and the NTSB's receipt and consideration of certain evidence. It is important to consider these errors within the context of the Pilot's Bill of Rights. The Pilot's Bill of Rights became law in 2012. Public Law 112-153. Congress drafted the Pilot's Bill of Rights to "restore fairness to airmen and Federal Aviation Administration enforcement proceedings." 158 Cong. Rec. H5100-01 (2012). In passing the Pilot's Bill of Rights, Congress intended to provide protections to pilots and other FAA certificate holders that were consistent with protections provided to defendants in other parts of the legal system. *Id.* To achieve this result, Congress has mandated that the NTSB is, to the extent practicable, to apply the Federal Rules of Civil Procedure and the Federal Rules of Evidence in its proceedings. Public Law 112-153. The Pilot's Bill of Rights reads:

> (a) In general.—Any proceeding conducted under subpart C, D, or F of part 821 of title 49, Code of Federal Regulations, relating to denial, amendment, modification, suspension, or revocation of an airman certificate, shall be conducted, to the extent practicable, in accordance with the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

In its regulations, the NTSB acknowledges its obligations. It prescribes in 49 C.F.R. § 821.5 that it will apply the Federal Rules of Civil Procedure to the extent practicable, albeit "for situations not covered by a specific Board rule." And in 49 C.F.R. § 821.38, the NTSB states that it will apply the Federal Rules of Evidence to the extent practicable after first stating that "all evidence which is relevant, material, reliable and probative, and not unduly repetitious or cumulative, shall be admissible. All other evidence shall be excluded."

Despite the fact that Congress used the command mandate "shall" in the Pilot's Bill of Rights, the NTSB's adherence to the Federal Rules of Civil Procedure and Evidence has been unfaithful. For instance, in *FAA v. Tushin*, NTSB Order No. EA-5902 (2021), it referred to the Federal Rules of Evidence as "non-binding guidance," which is tough to square with Congress' use of the word "shall," which is generally considered to be binding language. In *Tushin*, the airman argued the NTSB ignored rules of authentication and hearsay, giving the FAA a leg up in a revocation proceeding. At least two more NTSB decisions that postdate the Pilot's Bill of Rights describe the Federal Rules of Evidence as nonbinding guidance. *FAA v. Kennedy*, NTSB Order No. EA-5928 (2022); *FAA v. Norwitch*, NTSB Order No. EA-5914 (2021). Notably, "nonbinding guidance" was how the NTSB described the Federal Rules of Evidence before the Pilot's Bill of Rights. See e.g., *FAA v. Ferguson*, NTSB Order No. EA-5360 (2008). So the

NTSB has seemingly seen fit to ignore a Congressional directive to change its ways of informality and apply a time-tested set of rules that are designed to ensure fairness and a just result in legal proceedings.

True, the language admittedly does not require the Federal Rules of Evidence or Civil Procedure to apply in all situations. Congress qualified its mandate in the Pilot's Bill of Rights, requiring adherence to these rules only "to the extent practicable." But this qualification does not transform Congress' directive into nonbinding guidance. Indeed, words in a statute are interpreted according to their "ordinary, contemporary, common meaning" and we can determine this meaning by looking to dictionaries. *Fair Lines Am. Found. Inc. v. US Dept. of Comm.*, 619 F. Supp. 3d 212, 220 (D.D.C. 2022). In doing so, we learn that "practicable" means "reasonably capable of being accomplished" or "feasible in a particular situation." Black's Law Dictionary (11th ed. 2019). This Court should acknowledge that ordering that something "shall" done to the "extent practicable" is not the same as suggesting it be treated as "nonbinding guidance." True, an agency's interpretation of an ambiguous statute must be reasonable to receive deference under *Chevron, U.S.A., Inc. v. Nat. Res. Defense Council, Inc.*, 467 U.S. 837 (1984). The language Congress used here—"to the extent practicable"—is not ambiguous. And it is not a reasonable interpretation or application of a statute to

transform a Congressional mandate to do something when it is "practicable" into a mere suggestion that an agency may heed at its whim.

With the definition of practicable in mind, the situations where applying the Federal Rules of Civil Procedure or Evidence will not be practicable are likely few and far between. To speculate, there may be situations where the FAA is acting on an emergency basis and the speed of the proceedings is not conducive to strict adherence to procedural rules. See 49 C.F.R. §§ 821.52 *et seq.* Additionally, the nature of administrative proceedings may make some rules superfluous or unnecessary. For instance, given that the administrative law judge is the factfinder, conducting hearings on preliminary questions on evidence's admissibility outside the presence of a jury is not necessary. See Fed. R. Evid. Rule 104. In short, there are circumstances where adherence to the rules may be impracticable. But that does not reduce those rules to "nonbinding guidance."

Thus, there may be cases that present close calls as to whether adherence to the Federal Rules of Evidence or Civil Procedure is practicable. But Palmer's case presents no such close call. Indeed, Amici struggle to see how it was at all impracticable for the NTSB to apply the rules Congress directed should be applied in his case. Palmer's case was not an emergency proceeding and there was nothing in the record that suggested that the Federal Rules were impracticable to apply to

8

the case. There were no findings by the administrative law judge explaining why it was "impracticable" to apply the rules Congress instructed him to.

The NTSB may think that it is perhaps unwise, inefficient, or inconvenient to apply the rules Congress said it "shall." But in providing pilots the types of protections available to defendants in other contexts within the legal system, Congress surely understood there was a trade-off. Stated differently, applying procedural protections to administrative proceedings may make those proceedings more burdensome. But that trade-off was Congress' call to make. And it has dictated that the Federal Rules "shall" be used, and the NTSB may not disregard Congress' dictates for the sake of its own expedience or convenience. See e.g., *Melendez-Diaz v. Mass.*, 557 U.S. 305, 326 (2009) (explaining that courts may not ignore constitutional provisions for expediency's sake).

Palmer has argued both that the FAA's complaint and the NTSB's receipt of certain evidence did not comply with the Federal Rules of Evidence or Civil Procedure. Amici respectfully request that as a preliminary matter in assessing those assignments of error, this Court hold that the NTSB be required to make a judicially reviewable finding as to the practicality of applying the Federal Rules of Evidence or Civil Procedure. Given the NTSB's choice to dismiss Congressional mandates as "nonbinding guidance," action from this Court is necessary to effectuate Congressional intent. In the absence of an express finding on

9

practicality, this Court should hold that it will assume that application of the rules was practicable and that the rules apply with full force. And here, because there was no finding of impracticability, this Court should review Palmer's case with the view that the rules apply to their full extent.

## 2. Experts, even those employed by agencies, may not testify as to questions of law, including the interpretation of regulations.

Palmer repeatedly objected to the FAA's expert, Specialist Speeg, offering legal opinions from the stand. A265; A266-67; A280-81; A284; A286-87. Specifically, Specialist Speeg testified that Palmer violated a regulation, namely 14 C.F.R. § 91.119. Palmer correctly argues that an expert opinion that invades the province of a court and the factfinder is impermissible under Federal Rule of Evid. 702. Yet, the NTSB ignored the rule and allowed impermissible testimony nonetheless.

This ground is well trodden and federal courts have consistently held that such evidence is inadmissible. As this Court held in *Burkhart v. Wash. Metro. Area Transit Auth.*, 112 F.3d 1207, 1213 (D.C. Cir. 1997), "[e]xpert testimony that consists of legal conclusions cannot properly assist the trier of fact." Allowing such testimony can be "dangerous" as witnesses can be wrong on the law and, as a result, mislead the factfinder. *Id.*

Other courts have held similarly. "Experts cannot offer testimony regarding what law governs a dispute or what the applicable law means, because that is a

10

function of the Court." *Little v. Technical Specialty Products, LLC*, 940 F. Supp. 2d 460, 467-68 (E.D. Tex. 2013). "Allowing an expert to give his opinion on the legal conclusions to be drawn from the evidence both invades the court's province and is irrelevant." *Id.* at 468. In *Little*, the court excluded expert testimony that consisted "almost entirely of legal analysis and conclusions" in reaching a conclusion as to whether the defendants' conduct violated a federal statute. The court explained that was not within the proper scope of expert testimony.

*Little* is far from the only case that holds that experts cannot do the court's job of interpreting a regulation for it. See, e.g., *Woods v. Lecureux*, 110 F.3d 1215 (6th Cir. 1997) ("It is . . . apparent that testimony offering nothing more than a legal conclusion—i.e., testimony that does little more than tell the jury what result to reach—is properly excludable under the Rules."). In *United States v. Tamman*, 782 F.3d 543 (9th Cir. 2015), the court affirmed the exclusion of expert testimony when that expert's opinion consisted of "only a recitation of facts and the legal conclusion that [the defendant] acted in conformity with" the law. *Id.* at 553. This Court should follow the Ninth Circuit and conclude that "[t]his is not a proper expert opinion." *Id.*

*United States v. Noel*, 581 F.3d 490 (7th Cir. 2009) is also authoritative on this issue. In *Noel*, a detective testified that photographs found in the defendant's home met the definition of child pornography. She offered no explanation for the

opinion and offered only conclusory statements. The court held that the testimony should not have been allowed. It explained that "[a]n expert who supplies nothing but a bottom-line conclusion supplies nothing of value to the judicial process." *Id.* at 497 (internal quotation omitted). The court went on, elaborating on an analysis that should likewise be applied in this case:

> [The detective]'s "expert" testimony that the photos met the definition of child pornography was a bare conclusion that provided nothing but the bottom line, *i.e.*, that Noel possessed illegal photos. . . . She, in essence, told the jury nothing more than "I am familiar with the definition of child pornography, and this meets that definition because I said so." Regardless of whether [the detective] was an expert, she could not merely tell the jury what result to reach.

*Id.* at 497. As this Court has bluntly put it: "Each courtroom comes equipped with a 'legal expert,' called a judge, and it is his or her province alone to instruct the jury on the relevant legal standards." *Burkhart v. Wash. Metro. Area Transit Auth.,* 112 F.3d 1207, 1213 (D.C. Cir. 1997).

An agency like the FAA can certainly advocate for its interpretation of a regulation and its position that an airman violated a regulation. Such advocacy, however, must come either in written briefs or arguments from counsels' table. It should not come from the witness stand. Because Specialist Speeg's testimony on the meaning and application of § 91.119 violated this principle, the NTSB evidenced its unwillingness to apply the Federal Rules of Evidence as Congress has said it "shall."

### 3. Congress has not mandated that the NTSB defer to the FAA's choice of sanctions.

The NTSB imposed a 120-day suspension of Palmer's certificate. *FAA v. Palmer*, NTSB Order No. EA-5947 (2023); A513. In doing so, the NTSB cited this Court's decision in *Pham v. Nat' Transp. Safety Bd.*, 33 F.4th 576 (D.C. Cir. 2022), as requiring that it defer to the FAA's choice of sanction so long as it is not unwarranted in the law or without justification in fact. *Id.* at 48; A560-61. In *Pham*, this Court held that the NTSB is to defer to "the FAA's enforcement guidelines and sanction determination." *Pham*, 33 F.4th at 583. This Court vacated the NTSB's sanction determination because the NTSB's "decision did not accord appropriate deference" to the FAA's sanction. *Id.* at 584. This Court's ruling in *Pham*, however, erred in concluding that deference is required. For the following reasons, Amici respectfully request this Court reconsider *Pham*, *en banc* if necessary. See *LaShawn A. v. Barry*, 87 F.3d 1389 (D.C. Cir. 1996); *Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981).

To begin, as we explain in detail below, this Court's decision in *Pham* that the NTSB owes deference to the FAA's proposed sanction cannot be squared with the language Congress used in creating the appeals process for airmen certificate actions. See 49 U.S.C. § 44709(d). Furthermore, this Court's decision that the NTSB owes deference to the FAA is at odds with how other split-enforcement regimes work. In those circumstances, federal courts of appeal—including this

Court—have said an agency with adjudicatory authority is not bound by the proposal of the agency with enforcement authority. Compare *Pham* 33 F.4th at 582 with *Am. Coal Co. v. Fed. Mine Safety and Health Rev. Comm'n*, 933 F.3d 723 (D.C. Cir. 2019) and *Chao v. Occ. Safety and Health Rev. Comm'n*, 480 F.3d 320, 325 (5th Cir. 2007).

Finally, the Supreme Court decisions cited in *Pham* are distinguishable and offer no support for *Pham*'s holding. First, *Pham* misreads *Martin v. Occ. Safety and Health Rev. Comm'n*, 499 U.S. 144 (1991), as requiring deference to a choice of sanction even though the question of sanction was not at issue in *Martin*. Second, in citing *Am. Power & Light Co. v. SEC*, 329 U.S. 90 (1946), *Pham* failed to acknowledge that *Am. Power & Light Co.* did not involve a "split enforcement regime" like the one governing appeals of airman certificate suspensions and revocations.

Respectfully, this Court's error in *Pham* undermines the structure that Congress created for appeals in cases like this. This Court should reconsider *Pham* and overrule it if necessary.

### a. The language Congress used in U.S.C. § 44709(d) forecloses deference.

This Court's decision in *Pham* is in irreconcilable tension with the statutory language that Congress used in setting up the appeals process in airman certificate actions. That language slams the door on any argument that the NTSB must defer

14

to the FAA's choice of sanctions. Because Congress did not intend for deference in this area, none should be given.

Deference doctrines are rooted in a presumption about Congressional intent. See, e.g., *Kisor v. Wilkie*, 588 U.S. ___, 139 S.Ct. 2400, 2412 (2019). The thinking goes that when Congress entrusts an agency with drafting regulations, it also entrusts that agency with resolving ambiguities in the regulations it drafted. *Id.* But the presumption that undergirds deference is always rebuttable. *Id.* And importantly, if the language used by Congress leaves no room for deference, then deference should not be given. As the Supreme Court has said, "[i]f the intent of Congress is clear, that is the end of the matter, for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *City of Arlington, Tex. V. F.C.C.*, 569 U.S. 290, 296 (2013). Stated differently, Congress can foreclose deference when the language it uses leaves no room for deference.

With this principle in mind, look at the language Congress used when establishing how the FAA can either suspend or revoke airman certificates and how those matters are litigated. In cases like Palmer's that do not involve controlled substance violations, the procedure is outlined in 49 U.S.C. § 44709. If an FAA investigation concludes that safety in air commerce or air transportation and the public interest require it, the FAA may issue an order "amending, modifying, suspending, or revoking" an airman's certificate. The airman may then

15

appeal the matter to the NTSB. The NTSB's authority is set out in § 44709(d),

which reads in relevant part:

> **(d) Appeals.—**
> **(1)** A person adversely affected by an order of the Administrator
> under this section may appeal the order to the National
> Transportation Safety Board. After notice and an opportunity for
> hearing, the Board may amend, modify, or reverse the order when
> the Board finds—
>> **(A)** if the order was issued under subsection (b)(1)(A) of this
>> section, that safety in air commerce or air transportation and the
>> public interest do not require affirmation of the order;
>> **…**
> **(2)** The Board may modify a suspension or revocation of a
> certificate to imposition of a civil penalty.
> **(3)** When conducting a hearing under this subsection, the Board is
> not bound by findings of fact of the Administrator.

There is nothing in this text that suggests that Congress intended the NTSB

to defer to the FAA's choice of sanctions. Quite the opposite. For instance, under

§ 44709(d)(3), the NTSB is not bound by the FAA's factual findings. In other

words, the NTSB can reach different factual conclusions than the FAA did—it

need not defer to what the FAA says happened. Furthermore, the NTSB "may

amend, modify, or reverse" the FAA's order if the NTSB does not think that

affirmation of the order is required by safety in air commerce or air transportation

and the public interest. § 44709(d)(1)(A). The NTSB may also reject the FAA's

suggestion of a suspension or revocation of a certificate and impose a civil penalty

instead. § 44709(d)(2). Again, there is nothing in the text of this statute saying that

the NTSB must defer to the FAA. It instead clearly says the NTSB is free to reach

its own conclusions about the underlying facts as well how the airman is to be sanctioned.

To emphasize, the fact that the NTSB is not bound by factual findings of the FAA is alone enough to show that deference is not required. For example, assume that the FAA found the presence of two aggravating factors but no mitigating factors. Assume further that in its independent review of the facts, the NTSB found no facts proving aggravating factors but found facts supporting two mitigating factors. When agencies find different constellations of aggravating and mitigating factors, their conclusions as to the resulting sanction are going to differ. As a result, the fact that the NTSB is not bound by the FAA's factual determinations goes hand in hand with the NTSB's authority to impose a different sanction. The conclusion that deference is required simply cannot be reconciled with the statutory scheme.

Congress' intent is clear and that is the end of the matter—this Court "must give effect to the unambiguously expressed intent of Congress." *City of Arlington*, 569 U.S. at 296. Congress did not intend the NTSB to defer to the FAA's choice of sanction. *Pham* ignored this statutory text and, for that reason, it should be overruled.

17

**b.** ***Pham v. Nat'l Transp. Safety Bd.* is inconsistent with how other split enforcement regimes work.**

*Pham* cannot be reconciled with the text of § 44709(d) and that alone is enough to justify overruling it. But there is more evidence that *Pham* was wrongly decided. Namely, *Pham*'s holding that, within a split enforcement regime, an adjudicatory agency must give deference to a prosecuting agency's choice of sanction stands at odds with how this Court and other courts have ruled within that context. Indeed, courts of appeal have correctly held that an adjudicatory agency owes no deference to a prosecuting agency's choice of sanction.

This Court has previously recognized the structure created by Congress in appeals from FAA certificate actions as "split enforcement." See, e.g., *Pham v. Nat. Transp. Safety Bd.*, 33 F.4th 576 (D.C. Cir. 2022); *Garvey v. Nat. Transp. Safety Bd.*, 190 F.3d 571 (D.C. Cir. 1999). In this system, the FAA has regulatory and enforcement authority while the NTSB has adjudicatory authority. *Id.*

This system is not unique. There are at least two other regimes that Congress has set up in which regulatory and enforcement authority are given to one agency while another body is entrusted with adjudicatory authority. The operation of these systems is further evidence that the NTSB, the agency with adjudicatory authority, does not owe deference to the prosecutorial decisions of the agency invested with enforcement authority, the FAA.

18

For instance, within the Occupational Safety and Health statutory regime, the Occupational Health and Safety Commission has the "authority to assess civil penalties" in a case brought by the Secretary of Labor. 29 U.S.C. § 666(j). Within this system, "[t]he Commission's function is to act as a neutral arbiter and determine whether the Secretary's citations should be enforced over employee or union objections." *Cuyahoga Valley Ry. Co. v. United Transp.* Union, 474 U.S. 3, 7 (1985). The Secretary of Labor, on the other hand, is the "exclusive prosecutor of violations of the Act." *United Steelworkers of Am., Local No. 185 v. Herman*, 216 F.3d 1095 (D.C. Cir. 2000). See also, *Lance Roofing Co. v. Hodgson*, 343 F. Supp. 685 (N.D. Ga. 1972) (describing the process by which employer may challenge OSHA citations). And within this system, the Secretary of Labor proposes a penalty, and the Commission is free to accept that proposal or to reject it and assess an amount different than that proposed by the Secretary. See *Chao v. Occ. Safety and Health Rev. Comm'n*, 480 F.3d 320, 325 (5th Cir. 2007) (noting that, "without question" Commission is not bound by the Secretary's penalty proposals).

Mine Safety is another area where a split enforcement structure exists, as this Court explained in *Am. Coal Co. v. Fed. Mine Safety and Health Rev. Comm'n*, 933 F.3d 723 (D.C. Cir. 2019). This Court explained that Congress provided distinct roles for the Mine Safety and Health Administration and the Federal Mine Safety and Health Review Commission. The former, this Court said,

19

"inspects mines, issues citations for safety violations, and proposes civil penalties, all on behalf of the Secretary of Labor." *Id.* at 724 (internal quotation omitted). The latter "exercises the type of nonpolicymaking adjudicatory powers typically exercised by a court in the agency-review context." *Id.* (internal quotation omitted). As this Court analogized, "the Secretary plays the roles of police and prosecutor, and the Commission plays the role of judge." *Id.* (internal quotation omitted).

This Court stressed the independence of the Commission in *American Coal Co.* and rejected any argument that the Commission owed deference to the Secretary of Labor's proposed penalty. This Court wrote:

> once violations are found, the determination of the appropriate remedy is left to the Commission's independent, *de novo* judgment. The Secretary's proposed penalty is just that: a proposal. Nothing more. What penalty is ultimately imposed will be determined by the Commission applying the statutory factors.

*Id.* at 727 (internal citation omitted). See also, *Sellersburg Stone Co. v. Fed. Mine Safety and Health Rev. Comm'n*, 736 F.2d 11247 (7th Cir. 1984) (noting the Commission is not bound by Secretary's proposed penalties).

If we analogize these other split enforcement regimes to the situation before us, the result is clear. The FAA serves as the prosecutor while the NTSB serves as the neutral arbiter. If we carry the language that this Court used in *American Coal Co.* to this case, this Court's quote would read:

20

> once violations are found, the determination of the appropriate remedy is left to the [NTSB]'s independent, *de novo* judgment. The [FAA]'s proposed penalty is just that: a proposal. Nothing more. What penalty is ultimately imposed will be determined by the [NTSB].

*Am. Coal Co.*, 933 F.3d at 727 (alterations supplied). Amici respectfully submit that this statement accurately reflects how the system is designed to work. This statement is both consistent with the statutory text Congress employed as well as how other split enforcement regimes work. To the extent that *Pham* is inconsistent, it should be reconsidered and, if necessary, overruled.

**c.    The Supreme Court cases *Pham v. Nat'l Transp. Safety Bd.* relied upon are distinguishable and inapplicable to the question of whether the NTSB owes the FAA choice of sanction deference.**

Finally, the authority cited by this Court in *Pham* does not undermine this analysis. The cases this Court cited in *Pham* are inapplicable to the question of whether the FAA's sanction suggestion should receive deference.

For one, *Martin v. Occ. Safety and Health Rev. Comm'n*, 499 U.S. 144 (1991) does not require that an agency entrusted with adjudicatory functions defer to the prosecuting agency's chosen sanction. *Martin* emphasized its holding was narrow. *Id.* at 157. It speaks to deference within one context—namely, when an enforcing agency and an adjudicatory agency reach differing conclusions on a regulation, to whom is deference owed? *Martin* holds that it is the enforcing agency. It reasoned that, consistent with deference doctrines generally, "historical familiarity and policymaking expertise" lead to a conclusion that Congress has

21

delegated "interpretive lawmaking" to agencies rather than courts. Within the split enforcement context, the Court concluded that the enforcing agency had developed the policymaking expertise that warranted deference. As a result, when an enforcing agency and an adjudicatory agency are at odds over the meaning of a regulation, *Martin* holds that the enforcing agency wins that dispute. *Martin* importantly did not address the question of whether the adjudicatory agency must defer to the prosecuting agency when it came to choice of sanction.

Here, the NTSB and the FAA are not at odds with the meaning of any regulation and thus *Martin* is not applicable. If, hypothetically, the FAA and the NTSB reached differing interpretations regarding what 14 C.F.R. § 91.119 meant, *Martin* would dictate that the NTSB should defer to the FAA's reasonable interpretation. But the FAA and the NTSB are not disagreeing about the interpretation of an FAA-enacted regulation—rather, the NTSB is sitting in judgment of a case brought by the FAA against Palmer. This is not the situation that *Martin* speaks to and it thus offers no support for *Pham*'s holding.

The other case cited by *Pham*, *Am. Power & Light Co. v. SEC*, 329 U.S. 90 (1946), likewise does not stand for the rule that, within a split enforcement regime, the agency with the adjudicatory function must defer to the prosecuting agency. In *American Power & Light*, the Supreme Court reviewed an appeal from the Securities and Exchange Commission, which had entered an order dissolving

22

certain companies. For our purposes, the crucial point is that the order came from the SEC, which was both the adjudicatory agency as well as the administrative agency prosecuting the case. In other words, *American Power & Light* was not a case involving a split enforcement regime like the system before this Court in this case or in *Pham*. Whatever the Supreme Court said about deference in *American Power & Light* cannot carry given the significant differences in how Congress has chosen to structure the agencies. *American Power & Light* may very well cite the correct rule for how courts are to review a sanction imposed by an agency holding both enforcement and adjudicatory functions. But that situation has no bearing on the question here, where the question involves a split enforcement regime.

In conclusion, Congress gave the NTSB the power to "amend, modify, or reverse" an FAA order suspending or revoking an airman certificate. § 44709(d). It also provided that the NTSB may modify "a suspension or revocation of a certificate to imposition of a civil penalty." *Id.* It expressly provided that the NTSB is not bound by how the FAA views the facts. § 44709(d)(3). This is not the language Congress would have used if it had intended the NTSB to defer to the FAA's choice of sanction. It is the language Congress used to make clear the NTSB is to function as an independent tribunal, as is the case in other split enforcement systems. See *Am. Coal Co. v. Fed. Mine Safety and Health Rev. Comm'n*, 933 F.3d 723 (D.C. Cir. 2019).

23

## CONCLUSION

Amici's principal concern in this case is ensuring that what Congress legislated about how the NTSB is supposed to work is honored. Citizens and their elected representatives go through a burdensome process of passing legislation that directs agencies as to how to conduct their proceedings. The NTSB has chosen to ignore the directives and responsibility Congress gave it. This Court should not allow this result. It should require the NTSB to respect Congress' enactments about how it does its job.

Within this case, that means that this Court should hold that the NTSB must apply the procedural protections of the Federal Rules of Civil Procedure and Evidence. It also means that the impartial function of the NTSB in finding facts and imposing penalties be honored, which precludes deference to the FAA's choice of sanction.

/s/ Justine Harrison
Justine Harrison
Jared Allen
Ian Arendt
Daniel J. Hassing
Ryan King
Jeremy Browner
Raymond C. Speciale
AOPA
421 Aviation Way
Frederick, MD 21701
T: 301.695.2206
justine.harrison@aopa.org
Counsel for Amicus Curiae Aircraft
Owners and Pilots Association


/s/ Kathleen A. Yodice
Kathleen A. Yodice
Yodice Associates
12505 Park Potomac Ave., Suite 600
Potomac, MD 20854
T: 202.810.6800
Kathy.yodice@yodice.com
Counsel for Amicus Curiae
Experimental Aircraft Association


/s/ Justine Harrison
Justine Harrison
421 Aviation Way
Frederick, MD 21701
T: 301.695.2206
justine.harrison@aopa.org
Counsel for Amicus Curiae Alaska
Airmen's Association

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,635 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman.

Dated: December 18, 2023                    /s/ Justine Harrison

*Attorney for Aircraft Owners and Pilots Association and Alaska Airmen's Association*

26

## CERTIFICATE OF SERVICE

I certify that, on November 3, 2023, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Justine Harrison

*Attorney for Aircraft Owners and Pilots Association and Alaska Airmen's Association*