**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| TRENTON J. PALMER, <br><br> Petitioner <br><br> v. <br><br> MICHAEL G. WHITAKER, <br>Administrator, <br>FEDERAL AVIATION <br>ADMINISTRATION, <br><br> and <br><br> NATIONAL TRANSPORTATION <br>SAFETY BOARD, <br><br> Respondents. | No. 23-1239 <br><br> MOTION FOR LEAVE TO FILE <br>AMICUS CURIAE BRIEF <br>SUPPORTING PETITIONER |

**SENATOR TED BUDD MOTION FOR LEAVE TO FILE AMICUS
CURIAE BRIEF SUPPORTING PETITIONER**

Senator Ted Budd, by his undersigned counsel, respectfully requests

permission to file the attached proposed amicus curiae brief in the above captioned

case. Senator Budd requests leave under Fed. R. App. P. 29(a)(6) and D.C. Cir.

Rule 29(b) to file after the deadline for amicus briefs supporting petitioner.

Ted Budd is a United States Senator for North Carolina and a member of the

U.S. Senate Committee on Commerce, Science, and Transportation. Senator Budd

also holds a FAA-issued commercial pilot certificate, though he flies purely for

i

personal enjoyment not for a business or compensation. He pilots an airplane

capable of short takeoffs and landings at off airport landing sites. Should the ruling

below stand, Senator Budd has concerns about his own ability to conduct an

inspection pass as well as a practice "go-around" aborted landing and practice

instrument approach that terminates in a missed approach. As a Member of

Congress Senator Budd is concerned that FAA and NTSB have violated the APA

in several respects during the course of this case. He also wishes to bring to the

Court's attention the full legislative history of the Pilot's Bill of Rights—which

amended 49 U.S.C. § 44709, the statute at issue here—and other examples of split

enforcement regimes without choice of sanction deference. As a pilot, the ruling

below concerns deference to FAA's sanction policy which affects all airmen

subject to an enforcement action. Moreover, as both an aviator and a legislator on

the committee with jurisdiction over FAA and NTSB, Senator Budd has an interest

in ensuring the FAA and NTSB's split enforcement regime is functioning as

Congress intended. Amicus is an officer of the United States for the purposes of

Fed. R. App. P. 29(a)(2) and D.C. Cir. Rule 29(b) and thus has not sought consent

from the parties to file this brief.

     Senator Budd wishes to bring to the Court's attention additional arguments

and supporting materials on issues that the parties have raised. Though he raises

arguments that no other party or amicus has raised, these arguments are on issues

that the parties properly brought before the Court. Specifically, Senator Budd argues that styling 14 C.F.R. § 91.119's prefatory exceptions as an affirmative defense violates the Administrative Procedure Act, 5 U.S.C. § 556. Relying on his experience as a legislator, Senator Budd brings forward additional arguments and materials to show the statute's text and legislative history do not require mandatory deference to FAA's choice of sanction. Senator Budd also will show that prior cases mandating deference in split enforcement regimes are inapposite because they concerned agencies much different than the Federal Aviation Administration and National Transportation Safety Board. Further, Senator Budd provides examples of other split enforcement regimes without choice of sanction deference and argues that mandatory choice of sanction deference frustrates Congress's purposes for splitting prosecutorial and adjudication functions.

Senator Budd requests leave to file after the deadline because he was not aware Palmer's case had been appealed to this Court until the other amicus supporting Petitioner publicized their brief on December 20, two days after the filing deadline. Jim Moore, *AOPA Backs Trent Palmer's Bid to Overturn Suspension*, AOPA Media (Dec. 20, 2023), https://www.aopa.org/news-and-media/all-news/2023/december/20/aopa-backs-trent-palmer-bid-to-overturn-suspension. Furthermore, Senator Budd did not have an attorney on staff that was admitted to the Bar of this Court on the date of the deadline. Senator Budd has

filed this motion for leave before briefing is complete and approximately six weeks before oral argument is scheduled.

In view of the above circumstances, Senator Budd asks that this Court grant this motion for leave to file the attached proposed amicus curiae brief.

Dated: February 2, 2024                    Respectfully submitted,

                                           /s/ Eric Heigis
                                           Eric Heigis
                                           Office of Senator Ted Budd
                                           304 Russell Senate Office Building
                                           Washington, DC 20510
                                           (202) 224-3154
                                           Eric_Heigis@budd.senate.gov
                                           Counsel for Amicus Curiae

## CERTIFICATE OF SERVICE

I certify that, on February 2, 2024, the foregoing motion was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Eric Heigis

*Counsel for Amicus Curiae*

ORAL ARGUMENT SCHEDULED MARCH 11, 2024

No. 23-1239

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

———————————

TRENTON J. PALMER,

Petitioner,

v.

MICHAEL G. WHITAKER, Administrator, FEDERAL
AVIATION ADMINISTRATION,

and

NATIONAL TRANSPORTATION SAFETY BOARD,

Respondents.

———————————

On Petition for Review of an Order of the National
Transportation Safety Board

———————————

BRIEF OF AMICUS CURIAE SENATOR TED BUDD IN SUPPORT
OF PETITIONER TRENTON PALMER AND
REVERSAL OF THE ORDER OF THE NATIONAL
TRANSPORTATION SAFETY BOARD DATED MARCH 30, 2023

———————————

ERIC HEIGIS
*Office of Senator Ted Budd*
*304 Russell Senate Office Building*
*Washington, DC 20510*
*(202) 224-3154*
*Counsel for Amicus Curiae*

## CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), Amicus hereby certifies the following:

**A. Parties and Amici.** Except for the following, all parties, intervenors, and amici appearing in this Court are listed in the Brief for Petitioner Trent Palmer:

> Alaska Airmen's Association – Amicus Curiae;
> Experimental Aircraft Association – Amicus Curiae; and
> Senator Ted Budd – Amicus Curiae.

**B. Rulings Under Review**. References to the rulings at issue appear in the Brief for Petitioner Trent Palmer.

**C. Related Cases.** This case was not previously before this Court or any other court. There are no other related cases pending before this Court.

# TABLE OF CONTENTS

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ........... vii

TABLE OF AUTHORITIES ...................................................................................x

INTRODUCTION ................................................................................................1

STATEMENT OF INTEREST AND AUTHORITY OF AMICUS ........................2

STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS .........4

ARGUMENT ......................................................................................................5

    I.    FAA is enforcing 14 C.F.R. § 91.119 in a manner that violates the APA. .....5

        A.    Styling 14 C.F.R. § 91.119's prefatory exceptions as an affirmative defense violates the APA's prohibition on burden shifting. .................6

        B.    The NTSB ALJ's sweeping decision is arbitrary and capricious because it contradicts prior NTSB precedent and the agency explanation failed to display awareness of a significant change in policy or explain the change....................................................9

        C.    Failing to include an inspection pass in 14 C.F.R. § 91.119's prefatory clause is arbitrary and capricious in light of other long-recognized exceptions. ..........................................................................12

    II.    49 U.S.C. § 44709 and Supreme Court precedent do not require NTSB to defer to FAA's choice of sanction. .............................................................14

        A.    The text of 49 U.S.C. § 44709 does not require choice of sanction deference......................................................................................15

            1.    The presumption of purposive amendment canon does not allow the Court to ignore the significance of Congressional action...........................................................................15

            2.    The titles and headings canon provides further support that Congress did not intend to permit choice of sanction deference....................................................................18

B.     Legislative history does not show that Congress intended to preserve choice of sanction deference. ..............................................................20

III.  Choice of sanction deference is inconsistent with Congress's purpose in assigning an impartial adjudicator to decide FAA enforcement actions.......24

A.     Because NTSB has expertise in air safety matters, the Court should not have applied *Martin* to the FAA-NTSB split enforcement regime. ...............................................................................................24

B.     Other split enforcement regimes function without choice of sanction deference....................................................................................26

CONCLUSION ................................................................................................27

CERTIFICATE OF COMPLIANCE ...................................................................29

CERTIFICATE OF SERVICE ...........................................................................30

ADDENDUM .................................................................................................Ai

# TABLE OF AUTHORITIES

## Cases

*Almendarez-Torres v. United States*, 523 U.S. 224 (1998) ....................................18

*Am. Power & Light Co. v. SEC*, 329 U.S. 90 (1946).................................. 14, 17, 23

*Bhd. of R.R. Trainmen v. Baltimore & Ohio R.R. Co.*,
   331 U.S. 519 (1947)...................................................................................18

*Cal. Stevedore & Ballast Co. v. Occupational Safety &*
   *Health Rev. Comm'n*, 517 F.2d 986 (9th Cir. 1975) ...........................................23

*Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332 (1994)........................21

*Dir., Office of Workers' Comp. Programs, Dep't of Labor*
   *v. Greenwich Collieries*, 512 U.S. 267 (1994) ...................................................7, 8

*Eldred v. Ashcroft*, 255 F.3d 849 (D.C. Cir. 2001)........................................................5

*F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009) ...............................5, 9

*Friends of Earth v. Reilly*, 966 F.2d 690 (D.C. Cir. 1992) .......................................7

*Garvey v. Nat'l Transp. Safety Bd.*,
   190 F.3d 571 (D.C. Cir. 1999)................................................................. 2, 7, 24

*Hamdan v. Rumsfeld*, 548 U.S. 557 (2006) ...........................................................21

*Hinson v. Nat'l Transp. Safety Bd.*,
   57 F.3d 1144 (D.C. Cir. 1995)..............................................................................26

*Kisor v. Wilkie*, 139 S. Ct. 2400 (2019)................................................... 15, 19, 25

*Martin v. Occupational Safety & Health Review Comm'n*,
   499 U.S. 144 (1991)...................................................................................... passim

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut.*
   *Auto. Ins. Co.*, 463 U.S. 29 (1983) ....................................................................5, 13

*Pham v. Nat'l Transp. Safety Bd.*,
   33 F.4th 576 (D.C. Cir. 2022) ................................................................ passim

*Stone v. I.N.S.*, 514 U.S. 386 (1995) ................................................................15

*Twitter, Inc. v. Taamneh*, 598 U.S. 471 (2023) ..............................................15

*White v. Illinois*, 502 U.S. 346 (1992). ............................................................5

*Zuber v. Allen*, 396 U.S. 168 (1969) ...............................................................21

**Statutes**

29 U.S.C. § 661 ..................................................................................................24

49 U.S.C. § 106 ....................................................................................................2

49 U.S.C. § 1135 ............................................................................................2, 25

49 U.S.C. § 40103 ................................................................................................2

49 U.S.C. § 44701 ................................................................................................1

49 U.S.C. § 44703 ..............................................................................................16

49 U.S.C. § 44709 ....................................................................................... passim

49 U.S.C. § 44709 (2006 Supp. V) ...................................................................16

49 U.S.C. § 44710 ..............................................................................................16

49 U.S.C. §§ 1131–32 ....................................................................................2, 25

49 U.S.C. ch. 447 .................................................................................................2

49 U.S.C. ch. 463 .................................................................................................2

5 U.S.C. § 554 ......................................................................................................6

5 U.S.C. § 556 ............................................................................................. passim

5 U.S.C. § 706 ...................................................................................5, 6

Pilot's Bill of Rights, Pub. L. No. 112–153,
  126 Stat. 1159 (2012)................................................................. passim

**Other Authorities**

158 Cong. Rec. H5102 (daily ed. July 23, 2012)............................. 22, 23

158 Cong. Rec. S4733 (daily ed. June 29, 2012)............................. 21, 22

*Admin'r v. Johnson*, NTSB Order No. EA-739,
  1975 WL 20233 (1975)................................................................. 10, 13

*Admin'r v. McCollough*, NTSB Order No. EA-4020 (1993) ........................... 11, 13

*Admin'r v. Pham*, NTSB Order No. EA-5889, at 31 (2021) ...................................18

*Admin'r v. Simmons*, NTSB Order No. EA-5535 (2010) ........................................17

*Defense*, *Black's Law Dictionary* (11th ed. 2019) .....................................8

Federal Aviation Administration, Instrument – Airplane
  Airman Certification Standards (June 2018) .......................................11

Federal Aviation Administration, Instrument Procedures
  Handbook (Sept. 2017) ...........................................................12

Federal Aviation Administration, Pilot-Controller Glossary,
  FAA JO 7110.65AA (Apr. 2023) .........................................10

Federal Aviation Administration, Private Pilot – Airplane
  Airman Certification Standards (June 2018) .......................................11

*Go Around*, FLY 8MA ...........................................................10

Letter from Rebecca MacPherson, FAA Assistant Chief Counsel
  for Regulations, to Robert Anderson (Jul. 2, 2009)............................10

*Practice Instrument Approaches*, CFI NOTEBOOK ..................................10

*Senate Session – June 29, 2012*, C-SPAN ...................................................................21

*Social Sec. Admin. v. Burris*, 39 M.S.P.R. 51 (1988) ..............................................27

**Rules**

Fed. R. App. P. 29 ............................................................................................... i, ii, 3

D.C. Cir. Rule 29 ........................................................................................... i, ii, 3, 14

**Regulations**

14 C.F.R. § 91.119 .......................................................................................... passim

40 C.F.R. § 22.30(f) ..............................................................................................27

49 C.F.R. § 821.32 ..................................................................................................7

49 C.F.R. § 821.40 ..................................................................................................7

49 C.F.R. § 821.42 ..................................................................................................7

## INTRODUCTION

Congress has authorized the Federal Aviation Administration (FAA) to regulate nearly every facet of the aviation industry in the interest of air safety. The bulk of these regulations are based on broad grants of rulemaking powers rather than specific directives from Congress. The regulation at issue here, 14 C.F.R. § 91.119 is one such regulation. Congress has not directly addressed minimum altitude standards in a statute; rather FAA promulgated it based on the agency's broad rulemaking authorities. *See, e.g.,* 49 U.S.C. § 44701(a)(5) ("The Administrator of the Federal Aviation Administration shall promote safe flight of civil aircraft in air commerce by prescribing . . . regulations and minimum standards for other practices, methods, and procedure the Administrator finds necessary for safety in air commerce and national security.). In these instances Congress has a particular interest in ensuring FAA is exercising its broad authority in a reasoned manner. Congress relies on the standards in these statutes and the Administrative Procedure Act (APA) to ensure FAA properly exercises its authority. Amicus is concerned that FAA in this case has violated the APA by taking several positions that are arbitrary, capricious, or not in accordance with law.

Congress has enacted additional protections in air safety proceedings to separate prosecutorial and adjudicative duties. This takes the form of a split

enforcement regime wherein FAA prosecutes violations of its regulations and the National Transportation Safety Board (NTSB) "acts as an impartial adjudicator." *Garvey v. Nat'l Transp. Safety Bd.*, 190 F.3d 571, 573 (D.C. Cir. 1999). Though each agency has different primary functions, both agencies are experts in matters of air safety. FAA promulgates regulations; issues certificates, licenses, and waivers; and enforces laws and regulations related to air commerce and safety. *See generally* 49 U.S.C. ch. 447, 463; *id.* §§ 106(g), 40103. NTSB investigates aviation accidents and provides to FAA recommendations (including new regulations) to prevent future accidents. *See* 49 U.S.C. §§ 1131–32, 1135. Congress created this split enforcement regime to ensure aviation regulatory violations are adjudicated in an impartial forum; but one that is still staffed with aviation safety experts. Requiring NTSB to defer to FAA—particularly as to its choice of sanction— violates this impartial forum principle. Choice of sanction deference is not compelled by statute, and the Court should not read into the statute a deference standard that upends NTSB's role as an impartial adjudicator.

## STATEMENT OF INTEREST AND AUTHORITY OF AMICUS

Amicus Ted Budd is a United States Senator for North Carolina and a member of the U.S. Senate Committee on Commerce, Science, and Transportation. Senator Budd also holds a FAA-issued commercial pilot certificate, though he flies purely for personal enjoyment not for a business or compensation. He pilots an

airplane capable of short takeoffs and landings at off airport landing sites. Should the ruling below stand, Senator Budd has concerns about his own ability to conduct an inspection pass as well as a practice "go-around" aborted landing and practice instrument approach that terminates in a missed approach. As a Member of Congress Senator Budd is concerned that FAA and NTSB have violated the APA in several respects during the course of this case. He also wishes to bring to the Court's attention the full legislative history of the Pilot's Bill of Rights (which amended the disputed statute) and other examples of split enforcement regimes without choice of sanction deference. As a pilot, the ruling below concerns deference to FAA's sanction policy which affects all airmen subject to an enforcement action. Put together, as both an aviator and a legislator on the committee with jurisdiction over FAA and NTSB, Senator Budd has an interest in ensuring the FAA and NTSB's split enforcement regime is functioning as Congress intended.

Amicus is an officer of the United States for the purposes of Fed. R. App. P. 29(a)(2) and D.C. Cir. Rule 29(b) and thus has not sought consent from the parties to file this brief. In a motion preceding this brief Amicus seeks leave of court under Fed. R. App. P. 29(a)(6) to file this brief after the deadline for amicus briefs in support of the petitioner.

**STATEMENT OF AUTHORSHIP AND FINANCIAL CONTRIBUTIONS**

Pursuant to Fed. R. App. P. 29 (a)(4)(E), Amicus states that no party's counsel authored this brief in whole or part. No party or party's counsel contributed any money that was intended to fund the preparation or submission of this brief. No person or organization other than Amicus contributed money to fund the preparation or submission of this brief.

## ARGUMENT

### I.    FAA is enforcing 14 C.F.R. § 91.119 in a manner that violates the APA.

FAA's enforcement of its minimum altitude regulation, 14 C.F.R. § 91.119, and the NTSB's acceptance of that interpretation violate the APA in three ways.[1] First, styling § 91.119's prefatory exceptions for takeoff and landing as an affirmative defense violates the APA's prohibition on shifting the burden of proof from the proponent of an order to an opponent. 5 U.S.C. § 556(d). Second, the NTSB Administrative Law Judge's (ALJ) sweeping decision is arbitrary and capricious because it failed to display awareness of a significant change in policy or explain that change. 5 U.S.C. § 706(2); *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009). Third, the NTSB's decision to exclude an inspection pass from § 91.119's prefatory exceptions, in light of other longstanding exceptions, is arbitrary and capricious because it failed to consider an important aspect of the issue. 5 U.S.C. § 706(2); *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm*

---

[1] Amicus's arguments in this section do not raise new issues that may only be raised by parties. Although Petitioner did not invoke the APA, Petitioner makes clear his position that 14 C.F.R. § 91.119's prefatory exceptions are not an affirmative defense. Pet'r's Br. 23–24. Amicus raises its APA argument to "assist the court in addressing the issues already raised with new arguments and perspectives." *Eldred v. Ashcroft*, 255 F.3d 849, 852 (D.C. Cir. 2001) (Sentelle, J., dissenting from denial of rehearing en banc). The Supreme Court has previously considered merits arguments from an amicus on an issue raised by the parties but that the amicus argued in a different manner. *White v. Illinois*, 502 U.S. 346, 352 (1992).

5

*Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983). For these reasons, this Court should "hold unlawful and set aside [the] agency action." 5 U.S.C. § 706(2).

### A. Styling 14 C.F.R. § 91.119's prefatory exceptions as an affirmative defense violates the APA's prohibition on burden shifting.

In the case below, NTSB held that the takeoff and landing prefatory exceptions to 14 C.F.R. § 91.119 are affirmative defenses that the respondent must prove. A551–53; A125 (the ALJ held "it is the *Respondent's burden of proving* that the prefatory language and clause applies to him in order to avoid being found in violation." (emphasis added)). However, the APA prohibits agencies from shifting the burden of proof, as an affirmative defense does, without statutory authorization. The APA states that "[e]xcept as otherwise provided by statute, the proponent of a rule or order has the burden of proof" when a hearing is conducted under § 554. 5 U.S.C. § 556(a), (d). Section 554 applies to hearings when a matter must be determined by formal adjudication, meaning "on the record after opportunity for an agency hearing." *Id.* § 554(a). Thus, absent an exception, the APA prohibits burden shifting whenever (1) an agency is the proponent of an order; and (2) an agency hearing is conducted on the record. *Id.* § 556(a), (d).

No case has directly held that NTSB adjudications are subject to § 556. But this Court in *Garvey v. Nat'l Transp. Safety Bd.*, 190 F.3d 571, 573 (D.C. Cir.

6

1999), proceeded as if § 556 does apply. Further, the FAA-NTSB split enforcement regime in statute shows that § 556 applies to NTSB adjudications.[2]

When imposing a sanction for violating 14 C.F.R. § 91.119, FAA is the proponent of an order to "amend[], modify[], suspend[], or revok[e]" a pilot certificate. 49 U.S.C. § 44709(b). Appeals of that order to the NTSB require "notice and an opportunity for a hearing," *Id.* § 44709(d)(1), and are conducted on the record. 49 C.F.R. § 821.40. These hearings are conducted in front of an agency ALJ, *id.* § 821.42, and are the kind of "trial [like] proceeding" § 554 is intended to cover. *Friends of Earth v. Reilly*, 966 F.2d 690, 693 (D.C. Cir. 1992). Given that FAA is the proponent of an order and NTSB conducts an on the record, trial-like hearing with an agency ALJ, § 556 applies to the FAA-NTSB split enforcement regime.

Having established § 556 applies to proceedings under 49 U.S.C. § 44709, § 556 therefore prevents FAA and NTSB from styling the prefatory exceptions in § 91.119 as an affirmative defense. In *Dir., Office of Workers' Comp. Programs, Dep't of Labor v. Greenwich Collieries*, 512 U.S. 267 (1994), the Supreme Court held that § 556(d) prohibits agency ALJs from creating presumptions or

---

[2] The statute at issue here, 49 U.S.C. § 44709, is silent as to which party bears the burden of proof. By regulation NTSB's rules of practice confirm that "[i]n proceedings under 49 U.S.C. 44709, the burden of proof shall be upon the Administrator." 49 C.F.R. § 821.32.

7

affirmative defenses that shift the burden of proof unless authorized by statute. *Id.* at 271, 276, 281. By definition, "[t]he defendant bears the burden of proving an affirmative defense." *Defense*, *Black's Law Dictionary* (11th ed. 2019). Amicus conducted an exhaustive search and concludes there is no statute that authorizes FAA to create an affirmative defense here. Given that § 91.119 is based on a general rather than specific statute it is fair to assume that an exception in statute does not exist. *See Greenwich Collieries*, 512 U.S. at 271 ("We do not lightly presume exemptions to the APA"). Therefore, the APA prohibits FAA from enforcing, and the NTSB from applying, the prefatory exception in § 91.119 as an affirmative defense.

Despite the APA's limit on burden shifting, both the ALJ and full NTSB held that it is the respondent's burden to prove the prefatory exceptions to 14 C.F.R. § 91.119. Specifically, the ALJ held "it is the Respondent's burden of proving that the prefatory language and clause applies to him in order to avoid being found in violation." A125. The full NTSB affirmed, saying "[t]he law judge did not err in finding that respondent had the burden of establishing applicability of the prefatory language in § 91.119" and called this an "affirmative defense." A551–53. These holdings directly conflict with § 556. As such, the Court should find that the NTSB's holdings are contrary to law and remand this case for a decision that does not shift the burden onto Palmer.

**B. The NTSB ALJ's sweeping decision is arbitrary and capricious because it contradicts prior NTSB precedent and the agency explanation failed to display awareness of a significant change in policy or explain the change.**

The NTSB ALJ's decision in this case departed from prior NTSB precedent and represented a significant change in policy. The ALJ's failure to display an awareness of this change or to explain the reasons for the change was arbitrary and capricious. Amicus does not argue that agencies are not allowed to change policy. *See F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502 (2009). Rather, when the agency does change its policy, it must "display awareness that it *is* changing position". *Id.* at 515. Failing to do so is arbitrary and capricious.

In this case, the ALJ held:

> Subsection (c) [of 14 C.F.R. § 91.119] <u>creates a 500-foot bubble</u> around an aircraft, and no person, vehicle, vessel, or structure can enter that bubble if it is not necessary for takeoff or landing. . . . Given Respondent's <u>assertion that he was not landing</u> during his low level pass, it is clear that his low pass falls outside the prefatory exception. I, therefore, find he was not landing and the prefatory exception does not apply.

A125–26 (emphasis added). The full NTSB affirmed this holding. A554 ("[the ALJ] did not misinterpret the regulation as respondent suggests"). This sweeping holding contradicts prior precedent that considers training maneuvers such as a go-

9

around[3] and a practice approach[4] to be within the definition of "landing" in 14 C.F.R. § 91.119's prefatory exceptions.

Longstanding NTSB precedent has considered go-arounds and practice approaches to be within the definition of "landing" in 14 C.F.R. § 91.119's prefatory exceptions. *See* Letter from Rebecca MacPherson, FAA Assistant Chief Counsel for Regulations, to Robert Anderson (Jul. 2, 2009), https://www.faa.gov/sites/faa.gov/files/faa_migrate/interps/2009/Anderson_2009_Legal_Interpretation.pdf. For example, in *Admin'r v. Johnson*, NTSB Order No. EA-739, 1975 WL 20233 (1975), the NTSB held that the exception for takeoffs and landings does not strictly apply to instances "in which a wheel of the aircraft touches the surface of the runway." *Id.* at *2. The NTSB specifically cited touch and go landings and practice approaches as maneuvers within the definition of "landing" in 14 C.F.R. § 91.119's prefatory exceptions. Later NTSB precedent

---

[3] A "go-around" is an aborted landing conducted for either safety of flight or training purposes. *See Go Around*, FLY 8MA, https://fly8ma.com/topic/go-around/ (last visited Jan. 26, 2024). A go-around "can be executed at any altitude all the way down to the runway," meaning the maneuver will commonly require operations below the minimum altitudes specified in 14 C.F.R. § 91.119. *Id.*

[4] A practice approach—used to train pilots to fly by sole reference to instruments—is "an instrument approach where there is no landing intended." *Practice Instrument Approaches*, CFI NOTEBOOK, https://www.cfinotebook.net/notebook/aircraft-operations/approaches/practice-instrument-approaches (last visited Jan 26, 2024); *see also* FEDERAL AVIATION ADMINISTRATION, PILOT-CONTROLLER GLOSSARY, FAA JO 7110.65AA PCG P-3 (Apr. 2023).

confirmed that "simulated landing maneuvers are treated as landings" under the prefatory exception. *Admin'r v. McCollough*, NTSB Order No. EA-4020 at 4–5 (1993).

The holding in this case directly conflicts with *Johnson* and *McCollough*. In finding Palmer in violation, the ALJ specifically cited his "assertion that he was not landing." A126. That holding appears to require a pilot "touch[] the surface of the runway" for the prefatory exceptions to apply. Applying 14 C.F.R. § 91.119 in that way represents a significant change in policy. Go-arounds and practice approaches are common and longstanding components of flight training. In fact, FAA requires a pilot demonstrate these maneuvers in order to earn a private pilot certificate in an airplane or an instrument rating. *See* Federal Aviation Administration, Private Pilot – Airplane Airman Certification Standards 34 (June 2018), available at

https://www.faa.gov/sites/faa.gov/files/training_testing/testing/acs/private_airplane_acs_change_1.pdf; Federal Aviation Administration, Instrument – Airplane Airman Certification Standards 18 (June 2018), available at

https://www.faa.gov/sites/faa.gov/files/training_testing/testing/acs/instrument_rating_acs_change_1.pdf. Pilots must descend below the minimum altitudes in 14 C.F.R. § 91.119 to complete these maneuvers—particularly a missed approach

11

from a precision instrument approach.[5] That maneuver is executed at 200 feet above ground level. Without including these maneuvers in the prefatory exception, every future pilot will violate 14 C.F.R. § 91.119 during initial and advanced training.

Neither the ALJ nor full NTSB cited *Johnson* or *McCollough* despite each holding's conflict with these prior decisions. Failing to display an awareness of this significant policy change is arbitrary and capricious. Therefore, the Court should reverse the decision below and remand it to the agency so that it may clarify its holding to avoid such a significant change or adequately explain the change.

### C. Failing to include an inspection pass in 14 C.F.R. § 91.119's prefatory clause is arbitrary and capricious in light of other long-recognized exceptions.

NTSB also failed to consider an important aspect of the issue: how other long-recognized exceptions to 14 C.F.R. § 91.119 compare to an inspection pass. Agency action that fails to consider an important aspect of the issue is arbitrary and

---

[5] A standard practice instrument approach involves a pilot descending to the minimum altitude allowed on that particular approach. On a precision approach that minimum altitude is called a decision altitude (DA). The standard DA height is 200 feet above the runway elevation, meaning the pilot descends to 200 feet prior to executing a missed approach. *See* FEDERAL AVIATION ADMINISTRATION, INSTRUMENT PROCEDURES HANDBOOK, 4-19–20 (Sept. 2017), available at https://www.faa.gov/sites/faa.gov/files/regulations_policies/handbooks_manuals/aviation/instrument_procedures_handbook/FAA-H-8083-16B_Chapter_4.pdf.

capricious. *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).

As stated above, the NTSB has long held "simulated landing maneuvers are treated as landings" under the prefatory exception. *Admin'r v. McCollough*, NTSB Order No. EA-4020 at 4–5 (1993). NTSB gave a safety justification for expanding 14 C.F.R. § 19.119's prefatory exception beyond just takeoffs and landings: "because their purpose is to improve a pilot's capabilities in those operations." *Admin'r v. Johnson*, NTSB Order No. EA-739, 1975 WL 20233 at *2 (1975).

Conducting an inspection pass certainly improves a pilot's capabilities in off airport operations. But inspection passes are even more critical to safety than its value as a training maneuver. As FAA explains in its Off Airport Ops Guide, inspection passes are intended to check for obstructions such as "cuts in gravel, rocks, dips, bumps, etc. that can't be seen from directly above." A470. An inspection pass is not simply a pilot proficiency maneuver akin to a "simulated landing maneuver;" it is a critical part of the landing sequence that determines whether a potential landing site is safe.

NTSB failed to consider this important aspect of the issue. NTSB did not attempt to distinguish simulated landing maneuvers from an inspection pass. It did not distinguish the exceptions recognized in *Johnson* or *McCollough* and an inspection pass. Further, NTSB only gave a cursory glance at FAA's own guidance

13

on inspection passes and did not adequately explain why the guidance did not control the case's outcome. All of these considerations are important aspects of whether an inspection pass fits within 14 C.F.R. § 91.119's prefatory exception. NTSB's failure to consider these important aspects was arbitrary and capricious. Therefore, the Court should reverse the decision below and remand it to the agency so that it may consider these important unaddressed aspects.

## II.   49 U.S.C. § 44709 and Supreme Court precedent do not require NTSB to defer to FAA's choice of sanction.

In *Pham v. Nat'l Transp. Safety Bd.*, 33 F.4th 576 (D.C. Cir. 2022), this Court held that NTSB must defer to FAA if its choice of sanction "is unwarranted in law or is without justification in fact." *Id*. at 583 (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 112–13 (1946)). Amicus respectfully argues that this holding is incorrect based on the statute's text and legislative history. Amicus Ted Budd agrees with amicus AOPA's arguments that 49 U.S.C. § 44709's text does not support inferred deference to FAA's choice of sanction. AOPA et al. Amicus Br. 13–17. Amicus particularly agrees with AOPA's argument that determining a sanction is a highly fact specific endeavor, and NTSB is not bound by FAA's findings of fact. *Id.* at 16–17; *see* 49 U.S.C. § 44709(d)(3). To be respectful of the Court's time and in due regard to D.C. Cir. Rule 29(a), Amicus will not repeat these arguments. Instead, Amicus presents a different argument based upon canons of statutory construction and the Pilot's Bill of Rights' legislative history.

14

**A. The text of 49 U.S.C. § 44709 does not require choice of sanction deference.**

 Section 44709's text does not require NTSB to defer to FAA's choice of sanction. When a court interprets a statute, it starts by looking at the text itself. *See Twitter, Inc. v. Taamneh*, 598 U.S. 471, 484 (2023). Here, that task is more difficult because the Court must interpret silence created by a repealed provision. Nevertheless, "a court must exhaust all the 'traditional tools' of construction" before deferring to an agency's interpretation. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2415 (2019). The presumption of purposive amendment canon and the titles and headings canon are available to assist with this endeavor. Both of these canons show that the statute does not require choice of sanction deference.

　　1. <u>The presumption of purposive amendment canon does not allow the Court to ignore the significance of Congressional action.</u>

The presumption of purposive amendment canon presumes Congress "intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995). In 2012 Congress passed, and the President signed into law, the Pilot's Bill of Rights. Pub. L. No. 112–153, 126 Stat. 1159 (2012). Prior to the Pilot's Bill of Rights, 49 U.S.C. § 44709(d)(3) read as follows:

> (3) When conducting a hearing under this subsection, the Board is not bound by findings of fact of the Administrator *but is bound by all validly adopted interpretations of laws and regulations the Administrator carries out and of written agency policy guidance available to the public related to sanctions to be imposed under this*

15

> *section unless the Board finds an interpretation is arbitrary,*
> *capricious, or otherwise not according to law.*

49 U.S.C. § 44709(d)(3) (2006 Supp. V) (emphasis added). In other words, prior to

2012 federal law explicitly required NTSB to defer to FAA's interpretations of

law, regulations, and of its sanction policy. The Pilot's Bill of Rights amended §

44709(d)(3) by striking (without a replacement) the italicized text above.[6] Pilot's

Bill of Rights § 2(c)(2). Amicus is concerned that this Court's decision in *Pham*

ignored Congress's action and essentially read the repealed deference provisions

back into the statute.

 In enacting this amendment, Congress clearly intended these changes to

have some meaning. Otherwise there would be no point in engaging in the

laborious process of passing a bill in the House of Representatives, in the Senate,

resolving differences, and receiving the President's signature. That is why courts

recognize the presumption of purposive amendment. But this Court's decision in

*Pham* ignores this principle. In *Pham* this Court reasoned that "[r]emoving a

provision that provided for deference is not the equivalent of enacting a contrary

provision disallowing deference." *Pham*, 33 F.4th at 583. While that may be true in

the abstract, a prohibition on deference is not required for Palmer to succeed. There

---

[6] The Pilot's Bill of Rights made similar changes to 49 U.S.C. §§ 44703(d)
(appeals of denied initial or renewed certificates) and 44710(d) (certificates
revoked for controlled substance violations). *Id.* § 2(c).

is a difference between prohibiting NTSB from giving any weight to FAA's choice of sanction (a prohibition on deference) and giving NTSB discretion to modify a sanction based on each case's facts and circumstances (removing mandatory deference). Amicus argues that the statute allows NTSB the flexibility to modify a sanction if the facts in the case warrant. But *Pham* foreclosed NTSB's ability to exercise that independent judgment.

*Pham* requires deference to FAA's choice of sanction unless it "is unwarranted in law or is without justification in fact." *Id.* (quoting *Am. Power & Light Co. v. SEC*, 329 U.S. 90, 112–13 (1946)). This deference standard is a much higher standard than existed before the Pilot's Bill of Rights. A 2010 NTSB case explains the pre-Pilot's Bill of Rights deference standard: NTSB will defer to FAA's choice of sanction only if FAA "articulated clearly the sanction sought, and [asks] the Board to defer to that determination . . . . We have also indicated, however, that we will consider mitigating or aggravating factors in determining whether the Administrator's choice of sanction is appropriate." *Admin'r v. Simmons*, NTSB Order No. EA-5535 at 8–9 (2010). This standard allowed NTSB some discretion to modify a sanction based on findings of fact—namely aggravating and mitigating factors. NTSB applied a similar standard in *Pham*:

> We have emphasized that the determination of whether the Administrator's choice of sanction is reasonable is case-specific and is based upon the facts and circumstances adduced at the hearing. Further,

17

> we will consider both aggravating and mitigating factors in evaluating
> the reasonableness of an imposed sanction.

*Admin'r v. Pham*, NTSB Order No. EA-5889, at 31 (2021). In reviewing that case,

this Court determined that applying mitigating factors to lower Pham's sanction

violated the principles of deference owed to FAA. *Pham*, 33 F.4th at 583.

In effect, this Court's ruling in *Pham* gives FAA <u>more</u> deference than it

received prior to the Pilot's Bill of Rights. That not only treats Congress's action as

a nullity, it leaves pilots worse off than they were prior to the Pilot's Bill of Rights.

Amicus respectfully urges this Court to give meaning to Congress's amendments

in the Pilot's Bill of Rights by adjusting the choice of sanction deference standard

to one that is equal to or less deferential than the pre-Pilot's Bill of Rights

standard.

2. <u>The titles and headings canon provides further support that</u>
<u>Congress did not intend to permit choice of sanction deference.</u>

Another canon of statutory construction uses section titles as a "tool[]

available for the resolution of a doubt about the meaning of a statute." *Almendarez-*

*Torres v. United States*, 523 U.S. 224, 234 (1998) (quoting *Bhd. of R.R. Trainmen*

*v. Baltimore & Ohio R.R. Co.*, 331 U.S. 519, 528–29 (1947) (internal quotation

marks omitted)). Titles are not dispositive and cannot override the text. *Bhd. of*

*R.R. Trainmen*, 331 U.S. at 528. But here there is no text to interpret, given that

Congress repealed the previous language on deference.

18

The Pilot's Bill of Rights § 2 heading reads "FEDERAL AVIATION ADMINISTRATION ENFORCEMENT PROCEEDINGS AND ELIMINATION OF DEFERENCE."[7] App. A3. The heading of section 2(c)—which amended 49 U.S.C. § 44709(d)(3)—does not offer further clarity; it reads "Amendments to Title 49." *Id.* § 2(c). In using "elimination of deference" Congress clearly expressed its intention to change the then-existing deference standard. It strains credulity to think that Congress used the words "elimination of deference" to implicitly adopt a higher standard of deference for FAA's choice of sanction. But that has been the effect of this Court's ruling in *Pham*, as applied to Palmer's case. Amicus suggests the best reading of section 2(c)—titled "elimination of deference" and that repealed the explicit deference standard in law—is that Congress intended to eliminate NTSB's deference to FAA.

The general deference standards in administrative law are based on a presumption about how Congress intends the agency (or agencies) to resolve ambiguities. *See, e.g.*, *Kisor v. Wilkie*, 139 S. Ct. 2400, 2412 (2019) (citing *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 151–53 (1991)). This presumption may be rebutted by showing Congress's clear intent. While it is difficult to divine clear intent from (intentionally created) statutory silence,

---

[7] FAA includes Pilot's Bill of Rights § 2 in the appendix to its brief but it omitted the section heading. Resp't's Br. App. A7.

Congress's use of the phrase "elimination of deference" weighs in favor of interpreting the Pilot's Bill of Rights' text as removing NTSB's duty to defer to FAA's choice of sanction. While this result may not be abundantly clear (again owing to the silence created by repealed text) Congress provided sufficient textual evidence to overcome the presumption of deference.

Based on the foregoing textual analysis under the presumption of purposive amendment and titles and headings canons, Amicus respectfully requests this Court either eliminate or modify *Pham*'s mandatory choice of sanction deference to align with Congress's enactments in the text of the Pilot's Bill of Rights and 49 U.S.C. § 44709.

### B. Legislative history does not show that Congress intended to preserve choice of sanction deference.

This Court in *Pham*, and the FAA in defending the decision below, point to legislative history to support the choice of sanction deference standard. *Pham*, 33 F.4th at 584; Resp't Br. 53–54, fn. 22. But the legislative history only addresses general deference standards, not choice of sanction deference. Therefore, no conclusions on choice of sanction deference can be drawn from legislative history.

Neither the Senate Committee on Commerce, Science, and Transportation nor the House of Representatives Committee on Transportation and Infrastructure produced a committee report on the Pilot's Bill of Rights. Thus one can only rely upon statements in the Congressional Record, which the Supreme Court sees as

less reliable than a committee report. *See, e.g.*, *Zuber v. Allen*, 396 U.S. 168, 186 (1969) ("A committee report represents the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation. Floor debates reflect at best the understanding of individual Congressmen."). Floor statements should only be used to confirm the statute's apparent meaning. *See Hamdan v. Rumsfeld,* 548 U.S. 557, 580 n.10, 583–84 (2006); *Dep't of Revenue of Or. v. ACF Indus., Inc.*, 510 U.S. 332, 345–46 (1994).

Only three Members of Congress debated Pilot's Bill of Rights § 2. Senators Rockefeller and Inhofe placed a written colloquy into the record explaining the repeal of explicit deference language. *See* 158 Cong. Rec. S4733 (daily ed. June 29, 2012).[8] Senator Rockefeller stated that the language stricken from title 49 was no longer needed due to the Supreme Court's decision in *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144 (1991). 158 Cong. Rec. S4733 (daily ed. June 29, 2012). Senator Inhofe, the legislation's sponsor, concurred with Senator Rockefeller's statement. *Id.* In the House debate, Representative Bucshon made a similar statement about the redundancy of the stricken language. 158 Cong.

---

[8] This language was not read on the Senate floor, so we can assume the Senators chose their words carefully. *See Senate Session – June 29, 2012* at 21:37, C-SPAN, https://www.c-span.org/congress/#?chamber=senate&date=2012-06-29 (By unanimous consent, the Senate agreed to the following: "[That] any statements relating to the measure appear at the appropriate place in the [Congressional] Record as if given." This unanimous consent order does not appear verbatim in the Congressional Record.).

Rec. H5102 (daily ed. July 23, 2012). This Court in *Pham* cited these exchanges to posit that the repeal was only to remove language that *Martin* made superfluous.

While Senator Rockefeller and Representative Bucshon said that the deference standard for laws and regulations would not change, neither stated an intent to maintain the deference standard for sanction policy. Senator Rockefeller stated, "NTSB, in reviewing FAA cases, will apply principles of judicial deference to the laws, regulations, and policies that the Administrator carries out." 158 Cong. Rec. S4733 (daily ed. June 29, 2012). It is notable that he did not say "sanction policy." Just two paragraphs before that statement, Senator Rockefeller quoted the statutory language being repealed, saying:

> [L]anguage in 49 U.S.C §§ 44703(d)(2), 44709(d)(3), and 44710(d)(1) . . . expressly binds the NTSB to "all validly adopted interpretations of laws and regulations the Administrator carries out and of written agency policy guidance available to the public related to sanctions to be imposed."

*Id.* It is notable that Senator Rockefeller included the phrase "policy guidance available to the public related to sanctions" in the language to be repealed but only said "laws, regulations, and policies" in explaining what receives deference moving forward. Representative Bucshon also did not say anything about deference to FAA's sanction policy in his speech. He only mentions "FAA interpretations of laws, regulations, and policies." 158 Cong. Rec. H5102 (daily ed. July 23, 2012). It is hard to imagine that Representative Bucshon intended to

22

maintain mandatory deference to FAA's sanction policy, particularly when three sentences later he conveyed that pilots describe the NTSB appeal process as "not a true or fair appellate process." *Id.*

Even if this exchange evinces an intent to keep *Martin*'s deference regime, that does not mean Congress meant to keep choice of sanction deference. This Court in *Pham* recognized that *Martin* does not compel choice of sanction deference. *Pham*, 33 F.4th at 583. In fact, the agency at issue in *Martin¸* the Occupational Safety and Health Review Commission (OSHRC), is not required to defer to the Secretary of Labor. *Cal. Stevedore & Ballast Co. v. Occupational Safety & Health Rev. Comm'n*, 517 F.2d 986, 988 (9th Cir. 1975) ("The OSHRC thus determines the penalty de novo, considering the proposed penalty as, in fact, only a proposal."). To mandate choice of sanction deference, *Pham* relies on *Am. Power & Light Co.¸*, a case decided six months after the APA's enactment. The Congressional debate never referenced *Am. Power & Light Co.* That combined with the fact that the debate did not speak to sanction deference shows that the legislative history has no relevance in determining Congress's intended choice of sanction deference standard. Amicus urges the Court to apply the text of the statute, rather than ambiguous legislative history, to determine Congress's intended deference standard.

23

**III.    Choice of sanction deference is inconsistent with Congress's purpose in assigning an impartial adjudicator to decide FAA enforcement actions.**

In the air safety split enforcement regime FAA prosecutes violations of its regulations and the National Transportation Safety Board (NTSB) "acts as an impartial adjudicator." *Garvey v. Nat'l Transp. Safety Bd.*, 190 F.3d 571, 573 (D.C. Cir. 1999). Congress bifurcated these responsibilities to ensure aviation regulatory violations are adjudicated in an impartial forum; but one that is still staffed with aviation safety experts. Requiring NTSB defer to FAA strikes against Congress's purpose in separating prosecuting and adjudicating functions. To show this, Amicus will point to additional differences between NTSB and OSHRC and provide the Court examples of other split enforcement regimes that do not use choice of sanction deference.

**A. Because NTSB has expertise in air safety matters, the Court should not have applied *Martin* to the FAA-NTSB split enforcement regime.**

The *Martin* case involved the Department of Labor's (DOL) split enforcement regime. *Martin v. Occupational Safety & Health Review Comm'n*, 499 U.S. 144, 147 (1991). Violations of the Occupational Safety and Health (OSH) Act are brought by the Secretary of Labor; the OSHRC hears the appeals of the initial ALJ decision. Congress created OSHRC for the sole purposes of hearing these appeals. 29 U.S.C. § 661. After an extensive review of the OSH Act and its

legislative history, the Supreme Court determined OSHRC owed deference to the Secretary of Labor. *Martin*, 499 U.S. at 153–55. However, the Court took great lengths to "emphasize the narrowness of our holding" saying that the case only decides "the division of powers between the Secretary and the Commission under the OSH Act." *Id.* at 157. The Court further stated "[W]e take no position on the division of enforcement and interpretive powers within other regulatory schemes that conform to the split-enforcement structure." *Id.* at 158.

The NTSB is a much different agency than the OSHRC. It is not an agency solely focused on hearing FAA enforcement action appeals. NTSB's primary mission is to investigate aviation accidents and provide to FAA recommendations (including new regulations) to prevent future accidents. *See* 49 U.S.C. §§ 1131–32, 1135. NTSB is well aware of the consequences when FAA's safety regulations are violated. NTSB is not merely a neutral forum akin to a generalist court or specialty review commission; it is an agency with significant expertise in aviation safety. Congress entrusted NTSB with adjudicating FAA enforcement actions because Congress knew NTSB could rely upon its aviation safety expertise in deciding cases. Agency expertise is at the heart of judicially created deference regimes. *Kisor v. Wilkie*, 139 S. Ct. 2400, 2417 (2019). While NTSB may have a different role than FAA, it cannot be said that aviation safety is "distant from the agency's ordinary duties." *Id.* (cleaned up).

25

*Pham* is an outlier in that it is the only case to hold that *Martin* alone

requires NTSB to defer to FAA. *Pham*, 33 F.4th at 582–83. Yet this Court in *Pham*

did not do the kind of statutory analysis that the Supreme Court conducted in

*Martin* to justify extending the *Martin* precedent to FAA and NTSB. *Compare id.*

at 582–85 *with Martin*, 499 U.S. at 150–58. In fact, this Court in *Hinson v. Nat'l*

*Transp. Safety Bd.*, 57 F.3d 1144 (D.C. Cir. 1995), chided FAA for relying on

*Martin* to support its position on deference. 57 F.4th at 1148, fn. 2 ("we think the

FAA's reliance on *Martin* is misplaced. . . . [49 U.S.C. § 44709(d)(3)], rather than

the *Martin* analogy, determines that the NTSB owes deference to the FAA.").

Amicus urges this Court to conduct a robust analysis, rather than a passing inquiry,

to determine if *Martin*'s deference standard is appropriate for the FAA-NTSB split

enforcement regime. Amicus believes such an analysis will show that *Martin*'s

deference standard is not appropriate here and that NTSB does not owe deference

to FAA.

### B. Other split enforcement regimes function without choice of sanction deference.

Choice of sanction deference is not inherent to split enforcement regimes. In

addition to the two agencies AOPA points out in its brief, AOPA et al. Amicus Br.

18–21, at least two other split enforcement regimes do not use choice of sanction

deference. The Environmental Protection Agency's (EPA) Environmental Appeals

Board (EAB) reviews civil penalties that EPA assesses for permitting violations.

26

The EAB has the power to assess a higher or lower penalty than the EPA recommends. 40 C.F.R. § 22.30(f). Additionally, the Merit Systems Protection Board (MSPB) hears a range of personnel action appeals from across the federal government. In cases related to good-cause protections for agency ALJs, the MSPB reviews the penalty de novo, even if the prosecuting (employing) agency proves its case. *See Social Sec. Admin. v. Burris*, 39 M.S.P.R. 51, 64 (1988).

For over 30 years these split enforcement regimes have operated effectively with de novo review of penalties recommended by the prosecuting agency. Any argument that de novo sanction review is "antithetical" to a split enforcement regime falls flat. In fact, it is more antithetical to neutral forum principles for a prosecuting agency to have nearly unreviewable discretion to set a penalty based on a sanction policy the agency wrote for itself. Amicus urges the Court to allow NTSB the discretion to modify FAA's choice of sanction, relying upon its expertise in air safety matters and based on the unique circumstances of each case.

## CONCLUSION

Amicus is concerned that FAA and NTSB did not follow Congress's enactments in the APA, 49 U.S.C. § 44709, and Pilot's Bill of Rights. FAA and NTSB created an affirmative defense in 14 C.F.R. § 91.119 without statutory authorization. NTSB's decision was arbitrary and capricious because it failed to display an awareness of or explain contradictions with prior precedent and failed to

27

consider important aspects of the issue. Choice of sanction deference is not compelled by 49 U.S.C. § 44709 or the Pilot's Bill of Rights, and inferring such deference here frustrates Congress's reason for assigning FAA enforcement actions to an impartial adjudicator.

Amicus respectfully requests this Court hold unlawful and set aside the agency actions that violate the APA, 49 U.S.C. § 44709, and Pilot's Bill of Rights. Amicus further urges the Court to fix the unintended consequences in the wake of *Pham*, en banc if necessary, to restore the purposes Congress enacted into the statute governing FAA and NTSB's split enforcement regime.

Dated: February 2, 2024                     Respectfully submitted,

                                            /s/ Eric Heigis
                                            Eric Heigis
                                            Office of Senator Ted Budd
                                            304 Russell Senate Office Building
                                            Washington, DC 20510
                                            (202) 224-3154
                                            Eric_Heigis@budd.senate.gov
                                            Counsel for Amicus Curiae

## CERTIFICATE OF COMPLIANCE

1. This document complies with the word limit of Fed. R. App. P. 29(a)(5) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,465 words.

2. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14 pt. Times New Roman.

Dated: February 2, 2024                    /s/ Eric Heigis_____
                                           *Counsel for Amicus Curiae*

## CERTIFICATE OF SERVICE

I certify that, on February 2, 2024, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Eric Heigis
*Counsel for Amicus Curiae*

**ADDENDUM**

# TABLE OF CONTENTS

5 U.S.C. § 556(a), (d) ………………………………………………………... A1

49 U.S.C. § 44709(d) ………………………………………………………… A2

Pilot's Bill of Rights, Pub. L. No. 112–153 § 2(c), 126 Stat. 1159 (2012) …….. A3

158 Cong. Rec. H5101–02 (daily ed. July 23, 2012) …………………………... A4

158 Cong. Rec. S4733 (daily ed. June 29, 2012) ………………………………. A7

**5 U.S.C. § 556(a), (d)**

**§ 556. Hearings; presiding employees; powers and duties; burden of proof; evidence; record as basis of decision**

(a) This section applies, according to the provisions thereof, to hearings required by section 553 or 554 of this title to be conducted in accordance with this section.

. . .

(d) Except as otherwise provided by statute, the proponent of a rule or order has the burden of proof. Any oral or documentary evidence may be received, but the agency as a matter of policy shall provide for the exclusion of irrelevant, immaterial, or unduly repetitious evidence. A sanction may not be imposed or rule or order issued except on consideration of the whole record or those parts thereof cited by a party and supported by and in accordance with the reliable, probative, and substantial evidence. The agency may, to the extent consistent with the interests of justice and the policy of the underlying statutes administered by the agency, consider a violation of section 557(d) of this title sufficient grounds for a decision adverse to a party who has knowingly committed such violation or knowingly caused such violation to occur. A party is entitled to present his case or defense by oral or documentary evidence, to submit rebuttal evidence, and to conduct such cross-examination as may be required for a full and true disclosure of the facts. In rule making or determining claims for money or benefits or applications for initial licenses an agency may, when a party will not be prejudiced thereby, adopt procedures for the submission of all or part of the evidence in written form.

**49 U.S.C. § 44709(d)**

**§ 44709. Amendments, modifications, suspensions, and revocations of certificates**

. . .

(d) APPEALS.—

(1) A person adversely affected by an order of the Administrator under this section may appeal the order to the National Transportation Safety Board. After notice and an opportunity for a hearing, the Board may amend, modify, or reverse the order when the Board finds—

(A) if the order was issued under subsection (b)(1)(A) of this section, that safety in air commerce or air transportation and the public interest do not require affirmation of the order; or

(B) if the order was issued under subsection (b)(1)(B) of this section—

(i) that control or abatement of aircraft noise or sonic boom and the public health and welfare do not require affirmation of the order; or

(ii) the order, as it is related to a violation of aircraft noise or sonic boom standards and regulations, is not consistent with safety in air commerce or air transportation.

(2) The Board may modify a suspension or revocation of a certificate to imposition of a civil penalty.

(3) When conducting a hearing under this subsection, the Board is not bound by findings of fact of the Administrator.

A2

**Pilot's Bill of Rights, Pub. L. No. 112–153 § 2(c), 126 Stat. 1159 (2012)**

**SEC. 2. FEDERAL AVIATION ADMINISTRATION ENFORCEMENT PROCEEDINGS AND ELIMINATION OF DEFERENCE.**

. . .

(c) AMENDMENTS TO TITLE 49.—

(1) AIRMAN CERTIFICATES.—Section 44703(d)(2) of title 49, United States Code, is amended by striking "but is bound by all validly adopted interpretations of laws and regulations the Administrator carries out unless the Board finds an interpretation is arbitrary, capricious, or otherwise not according to law".

(2) AMENDMENTS, MODIFICATIONS, SUSPENSIONS, AND REVOCATIONS OF CERTIFICATES.—Section 44709(d)(3) of such title is amended by striking "but is bound by all validly adopted interpretations of laws and regulations the Administrator carries out and of written agency policy guidance available to the public related to sanctions to be imposed under this section unless the Board finds an interpretation is arbitrary, capricious, or otherwise not according to law".

(3) REVOCATION OF AIRMAN CERTIFICATES FOR CONTROLLED SUBSTANCE VIOLATIONS.—Section 44710(d)(1) of such title is amended by striking "but shall be bound by all validly adopted interpretations of laws and regulations the Administrator carries out and of written agency policy guidance available to the public related to sanctions to be imposed under this section unless the Board finds an interpretation is arbitrary, capricious, or otherwise not according to law".

A3

**158 Cong. Rec. H5101–02 (daily ed. July 23, 2012)**

Mr. BUCSHON. Mr. Speaker, I yield myself such time as I may consume.

I rise in strong support of the Pilot's Bill of Rights.

S. 1335, the Pilot's Bill of Rights, is intended to restore fairness to airmen and Federal Aviation Administration enforcement proceedings by providing airmen timely access to critical information and adding an additional level of appeal for airmen disputing enforcement action. This bill also requires the FAA to improve the system of providing notices to airmen and directs the FAA to review and approve the medical certification form.

Pilots have expressed frustration and concerns about what they believe is unfair and inequitable treatment during FAA enforcement proceedings before the National Transportation Safety Board. They complain that the burden of proof is on the airman to prove his or her innocence rather than the FAA proving guilt. To address this, the Pilot's Bill of Rights directs that, to the extent the NTSB finds practical, FAA enforcement proceedings should be conducted in accordance with the Federal Rules of Civil Procedure and Federal Rules of Evidence. This is consistent with protections provided to defendants in other parts of our legal system.

The Pilot's Bill of Rights also requires the FAA to better inform and advise an airman, who is the subject of an investigation, of his or her rights. The goal is to provide an airman with better and timely access to information. This includes notifying an airman that the releasable portions of the administrator's investigative report will, **[H5102]** at the appropriate time, be available to the airman.

The bill also clarifies that air traffic data collected by a government contractor that is available to the FAA, such as air traffic communication tapes, radar information, and air traffic controller statements, will also be available to the airman. However, it is important that the pilot community understands that, when the data has to be obtained from a government contractor, time is of the essence. Tapes containing air traffic data from contractors is [*sic*] ordinarily recycled after 15 days and would no longer be available to the FAA or the airman.

S. 1335 eliminates language that expressly bound the NTSB to all validly adopted interpretations of laws and regulations of the FAA unless the NTSB finds an interpretation to be arbitrary, capricious, or otherwise not according to law. The amendments are made only because they are redundant of what is already provided under law. The NTSB, when reviewing FAA cases, will continue to apply principles of judicial deference to the FAA interpretations of the laws, regulations, and policies in accordance with the Supreme Court precedent.

The Pilot's Bill of Rights adds an additional way to appeal to the NTSB's decisions regarding FAA enforcement action.

Currently, an airman goes before an administrative law judge at the NTSB and can appeal any decisions to the full NTSB board and, ultimately, to the court of appeals. According to pilots, the courts generally defer to the NTSB's decisions. It's not a true or fair appellate process.

The Pilot's Bill of Rights allows an airman to elect to file an appeal of his or her case in either the U.S. district court or the U.S. circuit court of appeals. It is the intent of Congress that courts not act in a way that is contrary to civil aviation safety in conducting their reviews of the NTSB's decisions.

Lastly, the Pilot's Bill of Rights requires the FAA to improve the system of providing notices to airmen—NOTAMs—and to undertake an assessment of the medical certification standards and forms. The overwhelming volume of NOTAMs and a vague and outdated medical certification process can lead to confusion and, ultimately, an FAA enforcement proceeding against an airman.

Again, I rise in strong support of S. 1335 and urge my colleagues to do the same.

I reserve the balance of my time.

Mr. COSTELLO. Mr. Speaker, I yield myself such time as I may consume, and I rise in support of S. 1335, the Pilot's Bill of Rights. I want to commend Senator INHOFE from Oklahoma for his leadership on this issue, as well as Chairman PETRI and Congressman BUCSHON, for bringing the bill to the floor in an expedited manner.

S. 1335 revises the process for the Federal Aviation Administration enforcement action against pilots, mechanics, and other airmen. The bill also directs the FAA to streamline important safety-related information provided to pilots before flight.

As I have said many times, the FAA must have the authority and resources necessary to keep the skies safe. To keep the skies safe, the FAA must use its enforcement power to take action, when appropriate, against pilots and other airmen who act in an unsafe manner. This bill does not weaken that authority; rather, it requires the FAA to hand over, at the earliest appropriate time, the evidence that could be used against pilots involved in enforcement actions, and it provides pilots with a new opportunity to test the FAA's enforcement orders in court. Additionally, the bill directs the FAA to streamline its publication of notices to pilots to ensure that they receive high priority and relevant safety information before flight.

This legislation is strongly supported by the Aircraft Owners and Pilots Association and the general aviation community.

A5

Mr. Speaker, I'm pleased to support this bill authored by my friend, Senator INHOFE, and I reserve the balance of my time.

Mr. COSTELLO. Mr. Speaker, I urge adoption, and I yield back the balance of my time.

Mr. BUCSHON. Mr. Speaker, I rise again in strong support of S. 1335. I'd like to thank Mr. GRAVES, the gentleman from Missouri, the lead sponsor on the majority side, and Mr. LIPINSKI from Illinois, from the minority side, for bringing this bill to the House floor.

I yield back the balance of my time.

The SPEAKER pro tempore (Mr. HARPER). The question is on the motion offered by the gentleman from Indiana (Mr. BUCSHON) that the House suspend the rules and pass the bill, S. 1335.

The question was taken; and (two-thirds being in the affirmative) the rules were suspended and the bill was passed.

A motion to reconsider was laid on the table.

**158 Cong. Rec. S4733 (daily ed. June 29, 2012)**

Mr. ROCKEFELLER. Mr. President, S. 1335, the Pilot's Bill of Rights, takes several steps to protect the rights of pilots, including modifications to the appeals process, and improvements to the Federal Aviation Administration's Notice to Airman System and medical certification process.
Most importantly, it preserves the
FAA's authority to take actions to maintain the safety of the air transportation system, and we want to be clear about the Congressional intent regarding one particular section of the bill.

Three provisions of the bill eliminate language in current statute governing the National Transportation Safety Board's (NTSB) adjudication of appeals of FAA orders that deny, amend, modify, suspend, or revoke an airman's certificate. Specifically, language in 49 U.S.C §§ 44703(d)(2), 44709(d)(3), and 44710(d)(1), which expressly binds the NTSB to "all validly adopted interpretations of laws and regulations the Administrator carries out and of written agency policy guidance available to the public related to sanctions to be imposed . . . unless the Board finds an interpretation to be arbitrary, capricious, or otherwise not according to law."

It is not the intention of the Senate to eliminate the NTSB's practice to observe the principles of judicial deference to the FAA Administrator when reviewing airmen appeals. The Senate only finds that this language is redundant of what is already provided for under the law and it is not the intent of the Senate to prevent the NTSB from applying the principles of judicial deference in adjudicating Federal Aviation Administration cases.

The purpose of these changes is simply to make the statute consistent with the laws governing all other Federal agencies. Thus, it is the intention of the Senate that the NTSB, in reviewing FAA cases, will apply principles of judicial deference to the interpretations of laws, regulations, and policies that the Administrator carries out in accordance with the Supreme Court's ruling in Martin v. OSHRC, 449 U.S. 114 (1991).

Mr. INHOFE. Mr. President, I concur.

Mr. REID. Mr. President, I ask unanimous consent that the Hutchison-Inhofe amendment at the desk be agreed to; that the bill, as amended, be read the third time and passed; that the motion to reconsider be laid upon the table, and that any statements relating to the measure be printed in the RECORD.

The ACTING PRESIDENT pro tempore. Without objection, it is so ordered.

A7