SCHEDULED FOR ORAL ARGUMENT ON MARCH 11, 2024

# United States Court of Appeals for the District of Columbia Circuit

## No. 23-1239

TRENTON J. PALMER,

*Petitioner,*

*v.*

FEDERAL AVIATION ADMINISTRATION/NATIONAL TRANSPORTATION SAFETY BOARD,

*Respondent.*

_____

*Petition for Review from Federal Aviation Administration Order Suspending the Pilot Certificate of Trenton J. Palmer on April 6, 2022, Otherwise Affirmed by the National Transportation Safety Board on March 30, 2023*

## REPLY BRIEF FOR PETITIONER

ROBERT D. SCHULTE
SCHULTE BOOTH, P.C.
14 North Hanson Street
Easton, Maryland 21601
Tel.: (410) 822-1200
Fax: (410) 822-1299
rschulte@schultebooth.com

*Counsel for Petitioner*

February 7, 2024



(800) 4-APPEAL • (325339)

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | | |
|---|---|---|
| Trenton J. Palmer. | ) | |
| | ) | |
| Petitioner, | ) | September Term, 2023 |
| | ) | |
| v. | ) | USCA Case No. 23-1239 |
| | ) | |
| Administrator of the | ) | |
| Federal Aviation Administration & the | ) | |
| National Transportation Safety Board, | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

**PETITIONERS' CERTIFICATE AS TO PARTIES,
RULINGS UNDER REVIEW, AND RELATED CASES**

Pursuant to the Court's Order dated July 31, 2020 (Document # 1854476), Petitioners hereby certify the following:

**A. Parties and Amici.** The parties to this case are Petitioner, Trenton J. Palmer, and Respondents, Administrator of the Federal Aviation Administration ("FAA") and the National Transportation Safety Board (NTSB). This matter was not before the District Court, and there are presently the following *amici* appearing: Aircraft Owners and Pilots Association, Experimental Aircraft Association, the Alaska Airmen's Association, and the Office of Senator Ted Budd of North Carolina.

i

**B. Rulings Under Review.** Petitioner seeks review, pursuant to 49 U.S.C. § 46110(a), of the final agency Order issued by the Administrator of the Federal Aviation Administration (hereinafter FAA) on April 6, 2022, affirmed by the National Transportation Safety Board on March 30, 2023, suspending the Airman Certificate of Trenton J. Palmer for alleged violations of 14 C.F.R. § 91.119 and § 91.13(a).

**C. Related Cases.** This case was not previously before this Court or any other court. There are no other related cases pending before this Court.

Dated this 7th day of February 2024.

                    Respectfully submitted,

                    **SCHULTE BOOTH, P.C.**

    By: */s/Robert D. Schulte*
        Robert D. Schulte
        5263 Bucktown Road, Suite #4
        Cambridge, MD 21613
        (410) 822-1200
        rschulte@schultebooth.com

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| Trenton J. Palmer. ) | |
| ) | |
| Petitioner, ) | September Term, 2023 |
| ) | |
| v. ) | USCA Case No. 23-1239 |
| ) | |
| Administrator of the ) | |
| Federal Aviation Administration & the ) | |
| National Transportation Safety Board, ) | |
| ) | |
| Respondents. ) | |

**CORPORATE DISCLOSURE STATEMENT**

Petitioner Palmer is an individual with no parent corporation or corporate members or shareholders, therefore no 26.1 statement is necessary. Palmer is additionally unaware of any publicly held entity with a direct financial interest in the outcome of this Petition for Review.

Respectfully submitted,

**SCHULTE BOOTH, P.C.**

By: */s/Robert D. Schulte*
Robert D. Schulte
5263 Bucktown Road, Suite #4
Cambridge, MD 21613
(410) 822-1200
rschulte@schultebooth.com

iii

## TABLE OF CONTENTS

                                                                             **Page**

CERTIFICATE AS TO PARTIES ...................................................................................i

CORPORATE DISCLOSURE STATEMENT ..................................................... iii

TABLE OF AUTHORITIES ..........................................................................................v

SUMMARY OF ARGUMENT.......................................................................................1

ARGUMENT ......................................................................................................................3

    I.    The FAA Utterly Ignores the Fact That the Administrator Withdrew the Issue of Appropriateness of the Landing Site .........................................3

    II.    There Was No Competent, Much Less Substantial, Evidence of Record that the Landing Site Was "Inappropriate". ...............................4

    III.    The FAA's Deficient Complaint.................................................................7

    IV.    Amici Do Not Raise New Issues..................................................................9

    V.    The FAA Does Not Address the Amicus *Pham* Argument..........................9

CONCLUSION .................................................................................................................10

CERTIFICATE OF COMPLIANCE........................................................................ 12

# TABLE OF AUTHORITIES

**Cases:**                                                                                                    **Page(s)**

*Admin. v. McCollough*, 2 N.T.S.B. 1034 (1974) .................................................6, 7

*Am. Coal Co. v. Fed. Mine Safety and Health Rev. Comm'n*, 933 F.3d 723 (D.C. Cir. 2019) ..........................................................................................................10

*Ashcroft v. Iqbal*, 556 US 662 (2009) ...................................................................8

*Bell Atl. Corp v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007) .........................8

*Eldred v. Ashcroft*, 255 F.3d 849 (D.C. Cir. 2001) ...............................................9

*Essery v. Department of Trans.*, 857 F.2d 1286 (9th Cir. 1988) ...............................5

*In re Flynn*, 973 F.3d 74 (D.C. Cir. 2020) ............................................................10

*Irons v. Diamond*, 670 F.2d 265 (D.C. Cir. 1981) ................................................10

*Pham v. Nat'l Transp. Safety Bd.*, 33 F.4th 576 (D.C. Cir. 2022) ......................9, 10

**Statutes & Other Authorities:**

5 U.S.C. § 556(d) ....................................................................................................2

49 U.S.C. § 46110(a) .............................................................................................. ii

14 C.F.R. § 91.13(a) ................................................................................................ ii

14 C.F.R. § 91.119 ................................................................................ ii, 1, 2, 3, 7

# SUMMARY OF ARGUMENT

As the Federal Aviation Administration notes in its Brief, the Parties do not dispute that the Petitioner operated an aircraft within "500 feet [of] any person, vessel, vehicle, or structure" on November 24, 2019[1] while conducting an FAA-advised "inspection pass" at an off-airport landing location. The FAA too concedes that coming close (within 500 feet) to persons or structures on the ground is a normal part of aircraft takeoff and landing operations.

The contest is joined over the issue of whether that operation was "necessary for takeoff and landing," as envisioned by 14 C.F.R. § 91.119. Despite its own published guidance on how to conduct off-airport landings, and despite its testifying "expert" conceding that following that guidance is "necessary" to conduct a safe and prudent off-airport landing, the FAA still violated Petitioner, justifying – and continuing to justify – its prosecution of Petitioner in a word salad that even the heartiest of appetites could not finish.

Indeed, the FAA Administrator claims – with no legal support – that it was Petitioner's burden to prove that his operation was "necessary for takeoff

---

[1] And even here, the FAA does not correctly quote the regulation.

1

and landing;"[2] or that his choice of landing location was "appropriate;" that is to say, that it is *Petitioner's* burden to show that he did *not* violate the subject regulation. This is contrary to the express provisions of 5 U.S.C. § 556(d) (except as otherwise provided by statute, the proponent of a rule or order has the burden of proof). Moreover, not one person – expert or otherwise – testified in this matter that Petitioner's intended landing site was "inappropriate." The only competent evidence of record is that Petitioner and his aircraft were perfectly capable of landing on the Likes' property and otherwise on the 30 x 500-foot *runway* that existed upon it; something the Administrator's only expert – FAA employee Roy Speeg – could not dispute due to his lack of competency in those areas, a want of factual basis or any identifiable standards to inform any opinions in that regard. That Petitioner did not actually land is irrelevant. Inspection passes and go-arounds are perfectly permissible and, well,

---

[2] To the extent Specialist Speeg opined that you must still honor the altitude and distance restrictions contained in 14 C.F.R. § 91.119 when conducting an inspection pass in accordance with the FAA's own off-airport operations guide, his testimony in that regard conflicts with his other testimony that, indeed, the inspection pass is "necessary" to conduct a safe and prudent off-airport landing. And if an inspection pass is necessary to conduct a safe and prudent off-airport landing, (and it is), the altitude and distance restrictions contained in the regulation do not apply. Pet. Br. 8-9, 25-26. Put simply, the inspection pass is essentially an abandoned practice approach – an operation perfectly consistent with NTSB authority that addresses that very topic. See Pet. Br. 41.

2

"necessary" for takeoff and landing at an off-airport location, even according to Mr. Speeg and the FAA itself. Pet Br. 8-9, 25-26.

Finally, the Administrator's Amended Complaint was simply a regurgitation of (some of) the language of 14 C.F.R. § 91.119. Its dearth of factual *allegata* does not satisfy the pleading requirements of the Federal Rules of Civil Procedure. In that regard, the suggestion that an aircraft operator who comes within "500 feet [of] any person, vessel, vehicle, or structure[s]" – something that the Administrator's own expert says is a regular occurrence – must prove to the FAA on demand that the operation was "necessary" would render virtually every takeoff and landing a violation of § 91.119 against which airmen would have to defend themselves.

Otherwise, the FAA's Brief misquotes the testimony had in the proceedings below, misquotes applicable authority, and otherwise makes a further mess of what should have been a very simple case. Petitioner explains.

## **ARGUMENT**

### I. **The FAA Utterly Ignores the Fact That the Administrator Withdrew the Issue of Appropriateness of the Landing Site**

In its Brief, the FAA glibly claims that the Administrator did not abandon the issue of the "appropriateness" of Petitioner's intended landing site. Clearly, it did. *See* FAA Br., pg. 42, FN18, *contra* Pet. Br. 28-30; A240-A242. With respect, the

3

Administrative Law Judge had no business – and went well beyond the bounds of impartiality by – bringing back into the case an issue that the Administrator wished to abandon and otherwise argued was irrelevant – a position that Petitioner did not challenge and, in fact, relied upon. Pet. Br. 30; A242-A243.

**II.   There Was No Competent, Much Less Substantial, Evidence of Record that the Landing Site was "Inappropriate."**

Even assuming otherwise, the Administrator claims that Petitioner stated in hearing testimony that the landing site was "unsuitable." The Administrator wildly misquotes the Petitioner. This is what he actually said:

**FAA:** **Okay, so there was more than one lower pass?**

**PETITIONER:** **No, there was one low pass and I found the landing site was not suitable for what I had expected and I moved on.**

**FAA:** **And what made you decide that it was not safe to land in?**

**PETITIONER:** **The intended touchdown spot that I had identified from the bounds was much harder to start [sic] on my final approach that I anticipated and going back to the off airports ops guide from the FAA you should be able to touch down within one aircraft length of your intended touchdown. And given that I couldn't identify it clearly enough I decided it was not a wise spot so I made a left climbing turn and left the area.**

A396-397.

Petitioner never said that the landing site itself was "unsuitable." Never.

4

Otherwise, there is no standard for what constitutes an "appropriate" landing site, something over which the Court in *Essery v. Dept. of Trans.,* 857 F.2d 1286, 1289 (1988) expressed concern. That said, *not one witness* in this case testified that the landing site was "inappropriate." No witness uttered the words that, to a reasonable degree of aviation safety, Petitioner's intended landing site was inappropriate because of X or Y factors. During his often rambling and incoherent dialogue, Mr. Speeg never even came close to offering an opinion to that effect.

Moreover, Petitioner's intended landing site could not have been "inappropriate" simply due to the presence of persons or structures. Indeed, Mr. Speeg testified that close proximity to persons and structures is common during approach, takeoff and landing operations. Pet. Br., pg. 9-10; A272-A275. No witness testified it was "inappropriate" because the Likes' *runway* was made of dirt or otherwise lacked the hallmarks of an "airport." Off-airport landings are perfectly permissible, and no Federal Aviation Regulation precludes those types of operations. Pet. Br. 8; A279. And once again, the FAA itself publishes a guide on how to conduct them.

So, what was it about Petitioner's intended landing site that made it "inappropriate"? Petitioner said he could land there, without refutation; Pet. Br. 32; Mr. Likes stated that he believed Petitioner could land there, without refutation; Pet. Br. 5, 32; and, for his part, Specialist Speeg testified, "I'm not disputing the fact that

5

he couldn't land there. He could land there[.]" Pet. Br. 38; A423.[3] And indeed, Petitioner's aircraft was purpose-built to take off and land at short, off-airport, unimproved locations. Pet. Br. 5, 32, FN6.[4] So the Parties agree that Petitioner and his Aircraft could land on the Likes' property. *Contra Administrator v. McCollough*,

---

[3] To be fair to Specialist Speeg, the remainder of his statement was "but in doing so, he creates a hazard, an undue hazard to persons and property in that subdivision." [because according to him, with an engine failure, "the *only* place he [Petitioner] could land is in the – on the roads in the subdivision."]. That statement is at odds with the evidence of record, Pet. Br. 5, 6, 12, 15, 36; Mr. Speeg's own acknowledgement that everything to the left of Petitioner's flight path was scrub and open desert, Pet. Br. 10, 36; as well as Petitioner's statement that he simply would have "gone out to the open sagebrush", as it was "a very sparsely populated area" and "there would be no reason to go to a road," in the event of a power failure. Pet. Br. 6. Moreover, as noted *infra*, none of this was alleged in the Administrator's anemic Complaint and Mr. Speeg was without sufficient knowledge to opine what would happen to Petitioner's aircraft in the event of a power unit failure. He simply knew nothing about the aircraft. Pet. Br. 8-10, FN15; A71, A249-A250.

[4] The FAA curiously states on pgs. 25-26 of its brief that "[b]ased upon the substantial evidence in the record and credible witness testimony, the NTSB properly upheld the ALJ's finding that this runway was not a suitable landing site. The only evidence Palmer points to in response is a mere assertion that he and his aircraft were capable of landing on the dirt runway. However, Palmer's ability to land on the runway is not a factor in determining whether the runway itself was suitable. Therefore, the NTSB's finding that the runway was not a suitable landing site, is supported by substantial evidence and should be upheld." FAA Br. at 25-26. First of all, the FAA cites *no* authority for the assertion that Petitioner's "ability to land on the runway is not a factor in determining whether the runway itself was suitable", – or what that "substantial evidence….and credible witness testimony" might be. Second, that assertion directly contradicts the testimony of their own putative expert, Roy Speeg. See Pet. Br. 9, 32, A80, A276-A278. Third, the FAA – whether it likes it or not – had already withdrawn the issue of the appropriateness of the landing site. Pet. Br. 28-31; A240-A242.

1993 NTSB LEXIS 242 (low level pass by Learjet violative of 14 C.F.R. § 91.119 because aircraft not capable of landing on designated landing site). And once again, Specialist Speeg, who admitted he knew nothing of Petitioner's Aircraft's performance characteristics, or of Petitioner's flying abilities – things he said were "all in the mix" in the determination of the appropriateness of a landing site – had no factual basis to opine on the appropriateness *vel non* of the Likes' property as a landing site. See Fed. R. Evid. 702.

The fact is, the ONLY thing that made the landing site "inappropriate" (and Petitioner certainly does not concede that point) was because the "likely biased" and "embellish[ing]" Peñas and perhaps other neighbors did not like it (and, of course, the FAA's *post-hoc* "because I said so"). Pet. Br. 12. But that a citizen is upset a regulatory violation does not make; and what remains is, essentially, a local land use issue that is of no concern to – nor within the jurisdiction of – the Respondent. Otherwise, the landing site was perfectly appropriate, given Mr. Speeg's "expert" testimony, as well as the unrefuted capabilities of Petitioner's Aircraft and those of Petitioner himself. Pet. Br. 5, 32, 38; A423.

### III. The FAA's Deficient Complaint

In its Brief, the FAA claims that "[t]he amended complaint tracks the regulatory language and the facts needed to prove these violations[.]. FAA Br. 46. Exactly. It merely "tracks the regulatory language" – albeit only some of that

7

language – and turns them into affirmative statements of fact which are otherwise an insufficient *"formulaic recitation of the elements of a cause of action[.]" Bell Atl. Corp v. Twombly,* 550 U.S. 544, 555; 127 S. Ct. 1955, 1965 (2007).

There are no facts in the complaint, or even allegations, that Petitioner's chosen landing site was inappropriate; no facts that explain why Petitioner's aircraft and its operation on the date in question posed an undue hazard to persons or property on the ground in the event of a power unit failure[5]; no facts to suggest or even allegations that the only place that Petitioner could land was in a housing development should that have occurred (which is contrary to the testimony of record by numerous witnesses). None. This is exactly the caution of *Twombly*.

Indeed, the altitudes and distances called-out in the Administrator's Amended Complaint could well-describe, apart from any regulatory violation, any normal takeoff and landing. As noted in Petitioner's Opening Brief, however, the Administrator's Amended Complaint "stops short of the line between possibility and plausibility." Pet. Br. 22, *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). And that renders the Amended Complaint insufficient under Federal pleading standards, which are otherwise applicable to this matter. That the Petitioner was able to cobble together a defense of the Administrator's claims does not – as the FAA suggests that

---

[5] While the FAA asserts on pg. 30 of its Brief that the Petitioner does not dispute the "undue hazard" finding(s) made by the Law Judge, Petitioner clearly does. Pet. Br. 16-17, 36.

it does – fix the deficiencies in his Amended Complaint and otherwise relieve the FAA of the responsibility to allege sufficient facts in his Amended Complaint, or for that matter, any complaint, to support the charges alleged.

IV.     **Amici Do Not Raise New Issues**

The FAA argues that Amici raised a new issue regarding the Pilot's Bill of Rights. Not so.

Petitioner raised issues with respect to both the sufficiency of the FAA's Amended Complaint and the receipt of Specialist Speeg's testimony under the Federal Rules of Civil Procedure and Evidence. See Pet. Br. 20-23; 34-39. These issues are properly before this Court; and the Petitioner has not argued they are not. *Amici* have done nothing more than highlight that, per Congressional directive in the Pilot's Bill of Rights, the Federal Rules of Civil Procedure and Evidence apply in NTSB proceedings. *Amici* have not presented new issues for the Court to decide. They have merely provided context for this Court's consideration, which is a proper role for an amicus. See *Eldred v. Ashcroft*, 255 F.3d 849, 852 (D.C. Cir. 2001) (Sentelle, J., dissenting from denial of *en banc* hearing) (explaining the role of amici is to assist court with new arguments and perspectives).

V.      **The FAA Does Not Address the Amicus *Pham* Argument**

The FAA does not meaningfully address the merits of Amici's arguments that *Pham v. Nat'l Transp. Safety Bd.*, 33 F.4th 576 (D.C. Cir. 2022) was incorrectly

9

decided and relies only on *stare decisis*. While a three-judge panel may not overrule another panel, this Court may convene an *en banc* panel *sua sponte*. See *In re Flynn*, 973 F.3d 74 (D.C. Cir. 2020).

This Court has also recognized an informal procedure of allowing an *en banc* Court to vote on certain points within a panel decision. *Irons v. Diamond*, 670 F.2d 265, 268 n.11 (D.C. Cir. 1981). This Court's guidance on *Irons* identifies "resolving an apparent conflict in the prior decisions of panels of the court" as an appropriate application. As *Amici* highlighted, there is an apparent conflict between *Pham* and *Am. Coal Co. v. Fed. Mine Safety and Health Rev. Comm'n*, 933 F.3d 723 (D.C. Cir. 2019) as the decisions differ in explaining how, within a split enforcement regime, the agency with adjudicatory authority is to treat the penalty proposal from the enforcing agency.

## CONCLUSION

For all of the reasons discussed above and in Petitioner's Opening Brief and in this Reply to the FAA's Brief for Respondents, Petitioner respectfully requests this Honorable Court vacate the FAA's Order of Suspension of the Petitioner's Airman Certificate and dismiss the Administrator's case against him with prejudice.

Dated: February 7, 2024

                                        Respectfully submitted,

                                        /s/ *Robert D. Schulte*
                                        Robert D. Schulte
                                        Schulte Booth P.C.
                                        5263 Bucktown Road, Suite #4
                                        Cambridge, MD 21613
                                        410-822-1200
                                        rschulte@schultebooth.com

                                        *Counsel for Petitioner*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B).

> __x__ The brief contains 2,547 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii), or
>
> ____ The brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6).

> __x__ The brief has been prepared in a proportionally spaced typeface using MS Word in a 14 point Times New Roman font or
>
> ____ The brief has been prepared in a monospaced typeface using MS Word 2002 in a _____ characters per inch _____ font.

02/07/2024                                     /s/ *Robert D. Schulte*
                                                Robert D. Schulte